## BOESE v. CHILDRESS et al.

No. 9968—Opinion Filed April 19, 1921.

Opinion· Denying Rehearing ·Sept. 13, 1921.

(Syllabus.)

**1. Frauds, Statute of—Oral Contract to Sell Land — Part Performance — Part Payment ¡and Possession.**

The rule seems to be that payment of the purchase money alone is not such part performance of an oral agreement to sell real estate as will authorize a court to enforce specific performance. But part payment and taking possession in good faith, and making valuable improvements, constitute such part performance as will ordinarily warrant a court in decreeing specific performance of the contract.

**2. Same—Sufficiency of Possession.**

In an action to enforce a parol agreement to convey lands, where possession is relied upon ·as part performance to take the case out of the statute of frauds, the character of the possession is of the greatest importance. It must be notorious, exclusive, continuous, and in pursuance of the contract.

Error from District Court, Beaver County; W. C. Crow, Judge.

Action by David Boese against Walter M. Childress and another for specific performance of contract to sell land. Judgment for defendants and plaintiff brings error. Affirmed, and remanded, with directions.

V. ⋅H. Grinstead and Morgan & Deupree, for plaintiff in error.

R. H. Loofbourrow and Roscoe Rizley, for defendants in error.

PITCHFORD, J. The plaintiff in error commenced this action in the district court of Beaver county against the defendants in error, seeking the specific performance· of a contract relating to certain real estate.

The evidence produced by the plaintiff at the trial shows the following state of facts: Stephen R. Childress was the owner of the land in controversy; he died, leaving, surviving him, his widow, Margaret A. Childress, and Walter M. Childress, Austin M. Childress, Henry H. Childress, and Rosa Davis, his children. The defendants, Margaret A. Childress and Walter M. Childress, were living upon the land at the date of the contract of sale to the plaintiff. The plaintiff, wishing to rent the land, went to the home of defendants for that purpose, but was informed by Mrs. Childress that she would prefer selling the premises, and she inquired of Walter what he thought about it. His reply was that the place belonged to her, and for her to do just as she liked about it. After further discussion, plaintiff agreed to buy the land. The price was finally agreed upon, to wit, $2,650. The plaintiff and defendants went to Liberal, Kan., for the purpose of having a contract executed. It appears they had decided to have Mr. Sawyer, an attorney of Liberal, to prepare the contract. When they arrived at Liberal, the plaintiff and Walter M. Childress went up to the office of Mr. Sawyer. Mrs. Childress did not accompany them, but remained in the car while the contract was being prepared. The contract was signed by Walter M. Childress and the plaintiff, and is as follows, omitting the caption:

"Witnesseth: That for and in consideration of the payment of two thousand six hundred and fifty dollars ($2,650.00) paid as hereinafter agreed upon (the receipt of $100.00 being paid on the within agreement as a part payment, and which is to be deposited with copy of contract within 10 days from date hereof in First National Bank, at Liberal, Kansas), by said second party, said first party hereby bargains, sells and agrees to transfer and convey the following described property, to wit: The N. E. ¼ of sec. 35, in twp. 5 N. R. 21, Beaver county, Okla., by proper deed, and furnish abstract showing good title to said property, free and clear of all incumbrances and taxes.

"It being distinctly understood. that the party of the first part is one of the heirs and owner of an interest in said land, and that he will partition said land and cause ·sale thereof for and on behalf of second party and protect him in obtaining the title to said property by virtue of such proceedings in such manner as may be deemed best, and that second party will either bid said land in at the sale thereof, or furnish the money out of ·the purchase price herein agreed upon, so first party can take said property for and on behalf of second party. That upon good and sufficient deed being furnished or delivered to second party, with abstract showing clear title. second party will pay the balance of the purchase price.

"It is further understood and agreed that second party hereby leases said tract of land above described, and is given possession at· this time of all of the ground except the pasture, for not to exceed six head of stock, house and barn for the season of 1915, and· that in the event of failure to make this ·deal as contemplated, second party, agrees to pay for the use thereof one-fourth of the crop delivered on said place; but in the event said deal is completed on or before the fall term of court, at Beaver, in 1915, so that second party will obtain such title, then no rent shall be paid by the second party, but in the event of failure to perfect said title and complete said deal as agreed upon, second party shall pay the said one-

fourth of the crop as rental or in event of sale of any grain prior thereto, account to first party for one-fourth of the money.

"It is further understood that should first party fail to perfect said title and obtain deed for second party on the terms agreed upon, said contract, so far as it relates to a sale, shall be null and void, and the money deposited shall be refunded and this agreement considered only as a lease for season of 1915. It being understood first party will immediately start court proceedings and push same through as soon as possible, and endeavor to obtain deed thereby for the second party on or before the August, 1915, term of court, at Beaver, Oklahoma.

"Witness our hands this 10th day of November, 1914.

"Walter M. Childress,
"Party of the first part.
"David Boese,
"Party of the second part."

The day after the contract was signed the plaintiff went into possession of the land, except the dwelling house and about six acres adjacent thereto. At the time the contract was executed, the land was subject to two mortgages, one in favor of the School Land Department in the sum of $800, and the other one in favor of one Johnson for $331.60 against the interest of Henry H. Childress.

After the plaintiff had taken possession of the land, it was found necessary to enclose a certain 40 acres with a fence. The plaintiff mentioned this matter to Mrs. Childress. and her reply was: "Just go on like you owned it and put your stuff in." It further appears that, at the request of Mrs. Childress and Walter Childress, the plaintiff paid the taxes on the land for 1914. On the 17th of February, 1915, the defendants purchased a cow from plaintiff, the price agreed being $75, which was to be credited on the purchase price of the land.

On the 27th day of May, 1915. the defendant Margaret A. Childress, in writing to the School Land Department in regard to the mortgage on the land, made this statement:

"In answer to your letter will say that I have sold the land on which the state holds the mortgage. This business will be finished in August term of court, and the state will get their money. I seen your appraiser and he said this was satisfactory."

The interest on the mortgage to the School Land Department becoming due, the plaintiff, at the request of the defendants, paid the same. On the 15th day of August, 1915, in pursuance of the agreement with the plaintiff, the defendant Walter M. Childress filed a partition suit against Margaret A. Childress and the other heirs. In the fall of 1915, plaintiff asked the defendants about

putting in a crop for that fall, and was told by them to: "Go on and work it just like your own." Some time during the month of February, 1916—the exact date does not appear—the defendant Walter M. Childress returned the cow purchased from the plaintiff, and at that time informed the plaintiff that the deal could not be consummated, and that he was returning the cow under the agreement at the time the cow was purchased. The plaintiff refused to accept the animal, stating at the time he had gone too far with the contract to allow the defendants to repudiate the same.

The action for partition was heard in January, 1916, appraisers were appointed, and it appearing that the land could not be divided between the several heirs, the defendant Margaret A. Childress elected to take the same at the appraised value on the —— day of April, 1916. In January, 1916, the judgment had been entered, foreclosing the mortgage against the interest of Henry H. Childress, and, on the 10th day of February, 1916, this judgment had been assigned to the plaintiff. On March 7, 1916, the mortgage due the School Land Department was assigned to the plaintiff.

The cause came on for trial on November 28, 1917. After the plaintiff had introduced his evidence, the defendants demurred thereto. The demurrer was sustained. From the judgment sustaining the demurrer, the plaintiff prosecutes this appeal.

The plaintiff argues three propositions, which he contends entitle him to judgment for the specific performance of the contract; however, the several propositions of the plaintiff will be discussed under one head—that is: Did the trial court commit error in sustaining the demurrer to the evidence?

Section 941, Rev. Laws 1910, provides:

"The following contracts are invalid. unless the same. or some note or memorandum thereof. be in writing and subscribed by the party to be charged. or by his agent."

Paragraph 5 of this section provides as follows:

"An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be charged. is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged."

If the plaintiff should rely upon the contract. signed by Walter M. Childress, then he would not be entitled to have specific performance, for the contract defined exactly what should be done in the event of the fail-

ure to complete the same. The contract specifically stated:

"It is further understood that should first party fail to perfect said title and obtain deed for second party on the terms agreed upon, said contract, so far as it relates to sale, shall be null and void, and the money deposited shall be refunded and this agreement considered only as a lease for season of 1915."

But the plaintiff contends that he is not confined to the written contract. His position is that there was an oral contract for the sale of the land between himself and the defendants, and that this contract was followed on the part of the plaintiff by such a part performance as to take the oral contract out of the statute of frauds, and not only to justify, but require, judgment in his favor, contending that an oral contract for the sale of real estate is taken out of the operation of the statute of frauds if possession is delivered to the purchaser, a portion of the purchase price is paid, and valuable improvements made, and cites a number of authorities.

Among other cases cited is Adams v. White, 40 Okla. 535, 139 Pac. 514, wherein the court says:

"It has been held that payment of the purchase money alone is not such part performance of an oral agreement to sell real estate as will authorize a court to enforce specific performance. But part payment and taking possession in good faith, or taking possession with the knowledge of the vendor and making valuable improvements, constitute such part performance as will ordinarily warrant a court in decreeing specific performance of the contract."

The plaintiff in the instant case argues that the part payment of the purchase price consisted in depositing $100 in the bank in accordance with the terms of the agreement; that he delivered a cow on the purchase price and tendered the balance of the price into court; that he also paid out $350 for the judgment against Henry H. Childress, and over $800 for the mortgage on the land; that he took possession of the land in good faith the day after the contract with the full knowledge of the defendants; that he made valuable improvements, by fencing 40 acres of the land. We must not overlook the fact that the $100 deposited in the bank was not paid to the defendants, but was placed in the bank in escrow. The evidence shows that, in February, 1916, the defendant Walter M. Childress returned the cow to the plaintiff and, at that time, informed him that he was not able to consummate the deal. At that time, the plaintiff had not paid anything on the mortgage except the interest,

and as to whether or not he had paid the $350 does not appear further than in the evidence of the plaintiff. He says that he had paid the $350 on the judgment, together with over $800 paid on the mortgage. We find that the mortgage was not paid until sometime in March.

In the case of Adams v. White, supra, the plaintiff had brought an action against the defendant, claiming to be the owner of the land in controversy by virtue of the purchase thereof at execution sale, in a cause wherein he was judgment creditor, which sale was approved by the district court on the 14th day of February, 1910, and a sheriff's deed executed therefor. The defendant claimed that, prior to the rendition of the judgment under which the land was sold, he entered into an oral contract with the judgment debtor for the purchase of said land at a stated consideration, part of which at that time he paid; that, at the time said contract was entered into, the defendant in pursuance thereof entered into possession of said land, commenced to improve same, and in all respects acted toward said land as if he were the legal owner thereof; that, at the date of the rendition of the judgment under which said land was sold, the defendant had been in peaceful possession of the premises under said contract for a period of about five months; that the contract between said judgment debtor and the said defendant was afterwards fully executed, the final act necessary thereto, to wit, the delivery of the deed from the judgment debtor to said defendant, being performed subsequent to the rendition of said judgment, but prior to said execution sale. It was there held, and properly so, that the oral contract of sale was not invalid under the statute of frauds.

In Sutherland v. Fred Taintor, 17 Okla. 427, 87 Pac. 900, cited by plaintiff, the party seeking specific performance did not rely entirely upon the contract, but based his contention upon the ground that the contract had been fully executed on his part, in this, that the consideration had been paid, and that he had been placed in possession of the premises, and immediately commenced to improve the land and make permanent improvements thereon. It was held the party was entitled to specific performance.

In Levy v. Yarbrough et al., 41 Okla. 16, 136 Pac. 1120, the 3d paragraph of the syllabus is as follows:

"A parol agreement for the sale of lands will be enforced by the courts where the vendee has paid the purchase price, and taken possession, in good faith, of the premises with the knowledge and consent of the owner, and has made permanent improvements

thereon. (a) But the mere acceptance of the purchase price under an oral contract is not of itself sufficient to take the sale out of the statute of frauds. (b) Nor will the fact that the owner orders an abstract of the property to be made take such case out of the statute."

All the authorities cited by the plaintiff go to this extent, and no further, that where either part or all the purchase money is paid, and the purchaser goes into possession of the land by virtue of the contract and retains possession, exercising toward the land the rights of ownership, and holding same openly and exclusively, then he would be entitled to specific performance. In the case at bar. the evidence clearly shows that the possession of plaintiff was entirely lacking in every essential necessary to establish the kind of possession contemplated by the law. His possession was not exclusive, and every act on his part, after the contract between him and Walter M. Childress was signed, discloses that he did not consider that he was in possession of the land as owner. When the plaintiff found it was necessary to build a fence around the 40 acres, he did not go ahead and build the fence as an owner of the 40 acres would proceed, but, before erecting the fence, he consulted the defendant Margaret A. Childress. In paying the taxes, he did not pay them as the owner of the land, but paid them at the request of the defendants, and the same may be said relative to the payment of interest upon the mortgage; and, in the fall of 1915, we find him consulting the defendants in regard to putting in a crop for that fall. His possession of the 120 acres was only the possession necessary for cultivating the same. Anyone passing by the place would find the defendants, during all this time, in possession of the buildings on the premises, and occupying the same as they had done before any contract was entered into. The possession of real property carries with it the presumption of ownership; the defendants being in possession at the same time the plaintiff claims to have also been in possession, the presumption of ownership would be as much in their favor as it would be in favor of the plaintiff.

In Halsell et al. v. Renfrow & Edwards, 14 Okla. 674, it was said in the 7th paragraph of the syllabus:

"A parol agreement for the sale of real estate may be specifically enforced where there has been such part performance of the contract as would make it impracticable to place the parties in their original positions, and thus make it a fraud upon one of the parties not to enforce the agreement."

We are unable to find wherein the plaintiff could be, in any respect, injured by the failure or refusal of the defendants to execute a deed to him for the premises. Any amount that he paid for taxes he could recover; the same is true as to any interest he paid on the mortgage, and also any amount that he paid for the judgment, or for the mortgage due on the land. Besides, he has cultivated the land without paying any rent therefor, and proof shows that one year he received something like 1,100 bushels of grain, another year something like 700 bushels of grain, and another year something like 300 bushels of grain. In other words, the plaintiff cannot complain, in any respect, of being injured by the failure or refusal of the defendants to execute the contract of sale.

Where the vendee continues to occupy or control the land in part, merely sharing the occupancy or control of it with the vendor, the mixed possession so resulting does not satisfy the requirements of the doctrine. There must be an actual and notorious, and not merely a constructive, possession. A mere technical possession, not open to the observation of the neighborhood, is insufficient. This is a result of the general rule that the evidence of part performance must be clear and convincing. Possession, in order to be an act of part performance, either alone or in connection with other acts, is subject to several requirements. First, it must have been taken in pursuance of the contract. Further, it must be exclusively referable to the contract; that is to say, it must be such a possession that an outsider, knowing all the circumstances attending it save only the one fact, the alleged oral contract, would naturally and reasonably infer that some contract existed relating to the land of the same general nature as the contract alleged. If the possession, therefore, could be accounted for just as well by some other right or title actually existing in the vendee's favor, or by some relation between him and the vendor other than the alleged oral contract, it is not such a possession as the doctrine requires. 36 Cyc. 659, 665, 668.

In Baldwin v. Baldwin, 73 Kan. 39, 84 Pac. 568, the rule is stated in the first paragraph of the syllabus as follows:

"In an action to enforce a parol agreement to convey lands, where possession is relied upon as part performance to take the case out of the statute of frauds, the character of the possession is of the greatest importance. It must be notorious, exclusive, continuous, and in pursuance of the contract."

When the plaintiff paid the judgment foreclosing the mortgage on the interest of Henry H. Childress, he had the judgment assigned to him, and, when he paid the mortgage of

$800 held by the Land Department, he had the mortgage assigned to him. If, at the time he paid these sums, he had considered himself the owner of the land, it certainly would appear that he would have done as any other owner of land would do in paying liens; that is, he would have had the owner of the lien enter the satisfaction of the same on the records. This the plaintiff failed to do. After he had purchased the judgment and the mortgage, the liens continued to be on the land and could have been enforced against the defendants.

We conclude the judgment of the trial court should be affirmed, and it is so ordered.

HARRISON, C. J., McNEILL, ELTING, and NICHOLSON, JJ., concur.

On Petition for Rehearing.

McNEILL, J. The court's attention is called for the first time on rehearing, to the fact that the judgment in the lower court did not dispose of all the issues necessary for a final determination of the case, and there is still left for the court to determine the amount due the plaintiff in error upon the mortgage and judgment and taxes paid by him which were liens upon the land. An examination of the record discloses that when the trial court sustained the demurrer to the evidence offered on behalf of the plaintiffs, these facts were considered by the court, and the court announced that the plaintiff would be entitled to a lien upon the land for the amount paid out by him upon the mortgage, judgment, and taxes, and the defendants would be entitled to offset the rental of the land while occupied by plaintiff. The court suggested that the parties might come to some agreement upon these items of accounting, but the record discloses the accounting was not had.

The petition for rehearing will be denied, and the judgment of the court affirmed, and the cause will be remanded to the district court to proceed with the accounting between the parties in accordance with the views herein expressed.

HARRISON, C. J., and PITCHFORD, JOHNSON, ELTING, KENNAMER, and NICHOLSON, JJ., concur.