**CESAR et al. v. OKLAHOMA FARM MORTGAGE CO. et al.**

No. 11637—Opinion Filed Nov. 20, 1923.

**1. Judgment—Judgment on Opening Statement.**

A motion for judgment upon the opening statement of the defendants' counsel should be denied unless such statement contains a distinct unequivocal admission of facts absolutely entitling plaintiff to judgment.

**2. Same—Error—Reversal.**

Counsel for plaintiff, at the close of the statement of the case to the jury by defendants' counsel, moved the court for judgment upon the opening statement of counsel for defendant, which was granted. Held, that, under the record in this case, it was error for the court to enter judgment on the statement of counsel for defendant, and for that error the case is reversed.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Pittsburg County; Harve L. Melton, Judge.

Action by Oklahoma Farm Mortgage Company and Andrew Kingkade, trustee, intervener, against Dug Cesar, Myrtle L. Cesar,

Henry Cesar, John A. Helton, J. B. Pillars, and American National Bank of McAlester. Judgment for plaintiffs, and defendants bring error. Reversed.

This suit, as originally brought, was by the Oklahoma Farm Mortgage Company against the defendants, Dug Cesar, Myrtle L. Cesar, Henry Cesar, John A. Helton, J. B. Pillars, and American National Bank of McAlester, to foreclose a second mortgage on certain premises for $1,645 interest on that mortgage and certain interest coupons due on the first mortgage, which was a mortgage executed to Andrew Kingkade by Dug Cesar and Myrtle L. Cesar for $11,750. The record in the case is voluminous and very complicated, and it has been with a great deal of study that we have been able to get an intelligent idea of the contention of the parties.

It appears that Dug Cesar and Myrtle L. Cesar made application to the Oklahoma Farm Mortgage Company for a loan on something over 500 acres of land in Pittsburg county for $11,750. The loan was drawn up for that amount and executed. The interest coupons were based on $11,750, and the bonds issued on said mortgage were based on a $11,750 loan, but some time after the loan was negotiated, for some reason not clear by the record, the Oklahoma Farm Mortgage Company notified the Cesars that they would have to reduce the loan to $11,000, as that was all the money they could get on the land. Now, instead of executing new papers based on the $11,000 loan, the Oklahoma Farm Mortgage Company returned coupon note No. 1, which was for $250, and coupon note No. 24, which was for $500, to the Cesars canceled, but did not make any other change in the papers; and it seems that a short time or about the time this loan was negotiated, the Oklahoma Farm Mortgage Company and Andrew Kingkade, who is the president of the Oklahoma Farm Mortgage Company, exeuted an agreement in writing with Dug Cesar and Myrtle L. Cesar, whereby they agreed, in consideration of the payment on said loan of $3,500, to release certain of the mortgaged premises, described in said contract, from the lien of said loan.

The Cesars afterwards negotiated a sale of this particular part of the mortgaged premises to the American National Bank of McAlester, and it appears from the answer of the Cesars and the American National Bank that this $3,500 was tendered to Andrew Kingkade and the Oklahoma Farm Mortgage Company and the proportionate share of the interest up to that time. But for some reason the said Kingkade and the Oklahoma Farm Mortgage Company refused

to accept said money and release the premises described from the lien of said mortgage; and it also appears that the defendants J. A. Helton and J. B. Pillars, made a deal with the Cesars to purchase certain parts of the mortgaged premises, and that they went to the office of the Oklahoma Farm Mortgage Company and made an agreement with said mortgage company and Andrew Kingkade that the Cesars might convey to each of them certain lands described at the time for a certain price made to the mortgage company and to Andrew Kingkade, and that they would release that part of the mortgaged premises from the lien of said mortgages. It is alleged that both Helton and Pillars attempted to comply with the terms of this agreement, but that the said Andrew Kingkade and the Oklahoma Farm Mortgage Company refused to carry out the terms of the agreement. It also appears that at the time the last agreement was made that deeds were drawn up in the office of the Oklahoma Farm Mortgage Company for the part of the land sold to Pillars, and that part sold to Helton, and that the same were executed by the Cesars with the understanding that the Oklahoma Farm Mortgage Company and the said Andrew Kingkade would release said land from the lien of the mortgages when the money agreed on was paid, which was to be at the first interest period; that Helton and Pillars went into possession of the land and made valuable improvements thereon, but that the Oklahoma Farm Mortgage Company and Kingkade would not carry out the terms of their contract, and that on account of these different deals falling through, the parties got into a wrangle, and when the next interest installment came due, the Cesars failed to pay it, because of the fact that the Oklahoma Farm Mortgage Company and the said Andrew Kingkade had failed to carry out their agreement, and for the further reason that they could not agree on what amount was due, and soon thereafter, the Oklahoma Farm Mortgage Company commenced suit to foreclose the second mortgage for $1,625, principal sum, with interest and attorneys fees for $1,148, and some other items. Answers were filed by the Cesars, Helton, and Pillar, and the American National Bank, in which they set up the deals made between them and the Oklahoma Farm Mortgage Company and the said Andrew Kingkade, and each alleged that they had tendered the amount agreed upon, but that the Oklahoma Farm Mortgage Company and Andrew Kingkade refused to accept it for various reasons, and the plaintiffs replied to their answer; and after that stage of the case was reached, Andrew Kingkade, trustee, intervened and filed a petition to foreclose the principal mortgage, which was $11,000, and interest. Substantially the same answers were filed to this intervening petition as were filed to the original suit. The case was reached for trial and a jury was empaneled, and counsel for plaintiffs and defendants made the statement of the case to the jury, and after said statements were made, the court took the case from the jury and entered judgment for both plaintiffs for the amount sued for on the statement of counsel for defendants. A motion for new trial was filed and overruled and time taken to prepare and serve case-made, and the case-made was in due time served, settled, and signed, and the record lodged in this court on various assignments of error, which will hereafter be noticed in the opinion.

Guy L. Andrews, for plaintiffs in error.

H. W. Harris, for defendants in error.

Opinion by MAXEY, C. This case is very much complicated and we are unable to bring ourselves to agree with the trial court in the manner in which it disposes of the case. There are so many complications in the case, and to our mind so many equities in the case, that ought to be taken care of, that we think it would have been much better if the court had sent the case to a referee and let the referee state the account between the parties, and take testimony on the various contentions with reference to the agreement to release certain properties from the lien of the mortgage upon the payment of certain sums of money, and reported his findings of facts and conclusions of law to the court. This course, in our judgment, would be a much better way to try the case than for the court and a jury to figure it out from the pleadings and the statement of the case of counsel for defendants. We have worked out the following: The application for the loan was for $11,750 and the bonds, interest coupons, and mortgages were all drawn on a loan basis of $11,750, but a few days after the loan was made and the papers drawn up, the loan company reduced the loan to $11,000 in the following manner: The Oklahoma Farm Mortgage Company tore out the first coupon bond, which was for $250, and the last coupon bond, which was for $500, and canceled them and handed them back to Cesar and said, "That reduces the loan to $11,000." No change was made in the papers that had been drawn on the basis of a $11,750 loan, they all remained with the figures the same. Now take the interest coupons, for example, they were calculated on a $11,750 loan and not on a $11,000 loan, and Cesar is still paying interest on $11,750 instead of $11,000, the amount he actually got. We

have not figured out the commission notes and interest, but it is a fair presumption that they will figure out in the same proportion. Then take the agreement that John A. Helton had with Cesar and the Oklahoma Farm Mortgage Company and Andrew Kingkade, trustee, and if the facts are as stated in Helton's pleadings and in his attorney's statement of the case, Helton had a right to have that land that he bought released from the mortgage. The same is true of the agreement entered into with J. P. Pillars, and so far as the American National Bank transaction is concerned, that was reduced to writing, and the written agreement is in the pleadings, and the bank alleges that they tendered the Oklahoma Farm Mortgage Company and Andrew Kingkade, trustee, the $3,500 and its proportionate share of the interest up to that time, and that Kingkade and the Oklahoma Farm Mortgage Company refused to release the land that the American National Bank had bought, but offered to take the money and credit it on the indebtedness generally, but would not release any of the securities. Pillar and Helton acted on the agreement made with the Oklahoma Farm Mortgage Company and Andrew Kingkade, took their deeds from Cesar and went on the land and improved it, and when the time come to make payment at the interest period, payment was refused unless they would permit them to credit it on the indebtedness generally and leave the lien on their land. It seems to us that if these facts are true that all of these parties have equities and if the proof bore out the statement of these facts, Helton and Pillars would be or might be entitled to pay for the improvements. The same might be so of the American National Bank. We think there is too much doubt about these various transactions to have entered judgment on counsel's statement, and then the manner in which the $11,750 loan was attempted to be reduced to the $11,000 loan does not work out according to our way of figuring. It is clear to us that justice has not been done the interested party, and that this case should be reversed and remanded.

We have read the pleadings and the statement of the case made by counsel for defendant, and we cannot take the same view of the transaction as the trial court. There has been very few cases where this court has sustained a judgment entered on the pleadings or on the statement of counsel. We have examined those cases where the judgment has been upheld but they stand on an entirely different footing from the case at bar. In those cases, it was clear from the statement that the party defendant was not entitled to recover under any phase of

the case, but in our judgment that is not the case here, and we are not satisfied to affirm this case where there is as much doubt exists as does in this case. In fact, we cannot bring ourselves to conclude that none of the defenses set up have no merit. We are convinced that at least some of them have merit. The amounts to be adjusted may be small, but that does not enter into the question as to whether the court committed error in entering judgment on the statement of counsel for the defendants. There are other errors assigned but it is unnecessary to notice them as we hold that for the errors pointed out, the case should be reversed and remanded, with directions to grant a new trial.

By the Court: It is so ordered.