## OKLAHOMA FARM MORTGAGE CO. et al. v. CESAR et al.

No. 24643. April 28, 1936.

Rehearing Denied May, 19, 1936.
Application for Leave to File Second Petition for Rehearing Denied Dec. 22, 1936.

Suits & Disney, for plaintiffs in error.

G. L. Andrews, for defendants in error.

RILEY, J. This is the second appeal in this case.

In 1918, defendant in error, Dug Cesar, made application to the Oklahoma Farm Mortgage Company, hereinafter referred to as plaintiff, for a loan of $11,750, to be secured by a real estate mortgage covering some 480 acres of land in Pittsburg county. The application was accepted and Cesar and wife executed a deed of trust, with Andrew Kingkade as trustee, to secure the principal sum with 6 per cent. interest, and a second mortgage to secure what was termed a commission note for $1,645.

The principal indebtedness secured by the deed of trust was represented by negotiable bonds, numbered from 1 to 24, No. 1 being for $250.

The deed of trust and second mortgage were placed of record before the title to the land was examined and approved. Before final approval it appears that the title to a small part of the land was not satisfactory, whereupon the loan was approved in the sum of $11,000. Instead of releasing the deed of trust and second mortgage of record, the mortgage company canceled and returned to Cesar notes or bonds Nos. 1 and 24, thus reducing the principal indebtedness to $11,-000. A credit of $100 was also given on the note secured by the second mortgage.

It does not appear whether the part of the land the title to which was disapproved was ever released of record from the deed of trust and mortgage.

Shortly after the deed of trust and mortgage were executed, the mortgage company and Andrew Kingkade, trustee, executed a written agreement with Cesar, whereby it

was agreed in substance that Cesar might sell 120 acres of the land to the American National Bank of McAlester, and that upon payment of $3,500 by Cesar, or the bank, that particular 120 acres would be released from the deed of trust and mortgage. Thereafter similar agreements are claimed to have been orally made as to other portions of the land, about 75 acres of which was about to be sold to John A. Helton for $1,150, and 70 acres to J. B. Pillows for $1,600, which sums were to be paid to the mortgage company, and the land covered by said agreements was to be released.

Disagreements appear to have arisen concerning the release of said lands, and the deals fell through. It is claimed that the mortgage company refused to carry out its agreements in the matter of the release of the lands. Negotiations concerning the matter continued for something over a year. In the meantime Helton had paid to the company as a portion of his purchase price of the land the sum of $69, which it appears was applied on Cesar's notes or bonds Nos. 2, 3, and 4.

Thereafter, and upon alleged default on the debt secured by the second mortgage, the mortgage company about April 19, 1919, commenced foreclosure proceedings upon the second mortgage. In the meantime Cesar had executed deeds to John A. Helton and J. R. Pillows, and they, together with the American National Bank, were made parties defendant.

Answers and cross-petitions were filed by the bank. Helton, and Pillows, setting up their claims under their several alleged agreements, and on March 26, 1920, Kingkade, as trustee, filed a plea in intervention seeking foreclosure of the lien under the deed of trust, which was a first lien. Issues were joined and judgment for the full amount was rendered for the intervener and mortgage company and sale and foreclosure ordered.

Appeal to this court was perfected, and the judgment and decree of foreclosure were reversed. Cesar v. Oklahoma Farm Mortgage Co., 93 Okla. 254, 220 P. 590. Pending the appeal no supersedeas bond was given, and the land was sold to Andrew Kingkade, trustee. A sheriff's deed was issued to him and he went into possession of the land and held possession down to the date of the second trial.

After the cause was remanded the pleadings were amended bringing in issue the question of damages by Cesar, Helton, and Pillows. The American National Bank dropped out of the case.

The amendment of Cesar (after adopting all the allegations in the original answer) alleged:

"* * * That the plaintiff and intervener, Andrew Kingkade, have been in possession of the premises mortgaged for about ten years; that at the time they took possession of said premises the lands were farm lands well equipped and in good state of repair, so far as concerns farm improvements and houses thereon; that the value of the premises when taken was not less than $25,000; that since the plaintiff and intervener have taken possession of said lands, they have removed, or allowed to be removed, a large portion of the improvements thereon; that they have allowed the fences to fall down; that they have removed and in some manner disposed of the wires thereon; that they have removed the barns and houses for the care of hogs from said lands; that they have failed to cultivate the lands in a farmerlike manner, and have allowed the lands to deteriorate and to become washed so that the soil has been washed off the lands, and great gulleys to appear where the farm lands were at the time of their possession; that the exact items of damage done and the exact things removed are peculiarly within the knowledge of the plaintiff and intervener; that your defendants have been kept out of the possession of said lands and have not been able to know what rack and ruin has been accomplished, and are not now advised as to the details thereof; that only recently has either of the defendants been able to view the premises at all, and then only from the lands adjoining the farms involved in this action, but your defendants say that by reason of the damage that has been allowed upon the place, and the waste of which the plaintiff and intervener have been guilty, that said lands have been damaged in the sum of more than $15,000.

"Wherefore, your defendants pray that an accounting be had; that the damage be assessed against the said plaintiff and intervener, Andrew Kingkade, and that they be given judgment over against said plaintiff and plaintiff and intervener in the sum of the difference between the mortgage herein sued upon and the damages done to the premises, together with the rents therefrom, in the sum of not less than $10,000, and for such other and further relief as they may in law and equity be entitled."

In his original answer and cross-petition he alleged in substance that on or about July, 1919, and before the plea in intervention was filed by the trustee, he had, under the provisions of the notes and mortgages, offered to pay all the mortgage indebtedness,

interest, etc., on the first day of December, 1919, and plaintiff and intervener had refused to accept same, and therefore they were not entitled to declare the indebtedness due, and were not entitled to collect any interest after said date.

The amendment of Helton to his cross-petition alleged that he had

"expended upon said premises by reason of the agreements made by the plaintiff and the intervener, Andrew Kingkade, and further pleading says that the plaintiff herein has been in possession of said lands ever since the year 1920; that during the time of their possession they have allowed the lands to become so wrecked that it is impossible for them to return the premises in the condition that they were at the time they acquired them from this defendant; that by reason of the acts of this plaintiff and the intervener, Andrew Kingkade, and the condition of the premises, as set forth, your defendant and cross-petitioner says that he has been damaged in the sum expended upon said premises, to wit: $1,235; the last items of which were expended in the year 1919; that he is entitled to recover said sum of $1,235, together with interest thereon at the rate of 6% per annum from the date of the breach of their contract, to wit, April 28, 1919."

He prayed for damages in the sum of $1,235, with interest at 6 per cent. from April 28, 1919.

The amendment of defendant Pillows was substantially the same as that of Helton except that he claimed his expenditures were $1,121, for which sum he prayed judgment.

The mortgage company and Andrew Kingkade, trustee, joined in an answer to the amended cross-petition of Cesar and therein pleaded in substance the former judgment, sale, and issuance of the sheriff's deed, and that Kingkade, as trustee, went into possession of the premises, and had ever since been in possession and control thereof, and:

"Is now in such possession and control thereof, and by reason of the premises and of the action of the Supreme Court of this state in reversing the judgment and decree of this court upon which said sheriff's deed was based, the said Andrew Kingkade, as trustee, has been during said period and is now a mortgagee in possession of said lands and tenements, and said intervening petitioner now offers an accounting of rent and revenues derived from said premises during the period he has held the same, and asks credit for various and sundry items of expenditure as hereinafter set forth."

They then denied generally and particularly that the lands had been permitted to lay out, or had deteriorated in any way by reason of the negligent or other acts of said trustee, and affirmatively alleged that he had been diligent in procuring tenants who had cultivated the land in a workmanlike manner, and specifically denied that he, or his tenants, had removed or permitted to be removed any of the improvements, and that whatever physical damage that had been done to the premises resulted from storms and other acts of the elements which were beyond the control of the trustee, etc., and that the land had depreciated in value largely because of the world-wide business depression, etc., and submitted an itemized statement of the alleged receipts and expenditures of the trustee while in his possession showing total receipts from rents, etc., to that date of $7,883.67, and expenditures of $2,863.16. They further alleged that said land had been appraised at $26,-000 at the time the loan was made, and that while the appraisement was made in good faith, the actual value at that time was not in excess of 3/5 of the appraised value, and that at the time the answer was filed the actual value of the lands and tenements was "about 50 per cent. of the supposed value thereof at the time the loan was made." There was no allegation as to the actual value at the time the trustee took possession.

Later an amended itemized statement of receipts and disbursement by the trustee was filed showing receipts down to October 18, 1932, showing receipts amounting to $8,-710.76 and expenditures amounting to $2,-996.48.

It will thus be seen that if the issues were complicated in the former appeal, they would appear to be much more complicated in this appeal. At the trial, however, a jury was empaneled to try the issues, and the court announced that:

"The only question that is going before this jury is the question of foreclosure on the part of the plaintiff, and the question of damages on the part of the defendant. * * *"

But, from the opening statement of counsel and the record made at the trial, it appears that nearly every question that was or could have been put in issue in the former trial and under the amended pleadings was gone into.

At the close of all the evidence, the mortgage company and the trustee demurred to the evidence of defendants and moved for a directed verdict for plaintiff. This demurrer and motion was overruled, whereupon the court instructed the jury to return a

verdict for defendant John A. Helton in the sum of $1,235, together with $810 interest, and to return a verdict in favor of defendant Pillows in the sum of $1,120, with interest in the sum of $743.

The court further instructed the jury:

"Gentlemen of the jury, you are further instructed that on or before the first day of December, 1919, that the defendant Dug Cesar tendered to the plaintiff the entire amount due on the first and second mortgage, which tender was refused and you are not to consider any interest due or payable from said debt from that date until this date. Exceptions saved. H. W. Harris."

And:

"You are further instructed that during the entire time of this litigation that the trustee has received in excess of all expenditures, which includes taxes, and improvements and other expenses, the sum of $5,207.83, which you are instructed to deduct and subtract from the original loan of $11,000, in the event that you find for this defendant. Exceptions saved. H. W. Harris.

"And you are further instructed, gentlemen of the jury, that in the event that you should find for the plaintiff in this action, who is Andrew Kingkade, the intervener herein, that you should deduct the sum of $5,207.83 from the original loan, which was $11,000. Exceptions saved. H. W. Harris."

And:

"Gentlemen of the jury, evidence has been submitted to you relative to the damages to the premises involved in this mortgage, and you may consider the evidence of the witnesses as to said damages, which this defendant, Dug Cesar, claims to be 50% of the physical value of said lands and tenements as of today, and you may take into consideration this evidence as to the physical damages of said premises and assess the damage against the trustee, Andrew Kingkade, deducting from said damages the amount that would be due as you were hereinbefore instructed and return a verdict for the balance in favor of either party as you may find the facts to be."

These were the only instructions given to which any objection was attempted to be made or any exceptions attempted to be saved.

Verdicts were returned in favor of defendants Helton and Pillows in accord with the instructions given.

A separate verdict was returned as follows:

"We, the jury in the above entitled cause, find that Andrew Kingkade, trustee, in his possession and use of the property involved in this cause, did not use due care in the operation thereof and that, by reason thereof, said property has been physically damaged during his possession and use thereof in the sum of $3,000.

"J. S. Stallings,
"Foreman."

After unsuccessful motions by plaintiff and intervener to set aside the verdicts, for judgment notwithstanding the verdicts, and for new trial, judgments were entered against the mortgage company and Andrew Kingkade, intervener, in favor of Helton in the sum of $2,045, and in favor of Pillows in the sum of $1,863, and in favor of Dug Cesar and against the mortgage company and Andrew Kingkade, intervener, in the sum of $3,000, and canceling all the notes and mortgage and the deed of trust, canceling the sheriff's deed theretofore issued, and for the return of possession of all the premises described in the deed of trust and mortgage to Dug Cesar, and allowing an attorney's fee in favor of defendants in the sum of $4,500.

The first proposition presented is that the court erred (a) in overruling the demurrer of Andrew Kingkade, trustee, to defendant's evidence; (b) error in refusing to instruct a verdict in favor of Andrew Kingkade, trustee; and (c) error in overruling the motion of plaintiff and intervener for judgment notwithstanding the verdict.

As to these contentions it is sufficient to say that, inasmuch as it is admitted that Andrew Kingkade, as trustee, was, after the execution of the sheriff's deed, a "mortgagee in possession", and there was evidence reasonably tending to show negligence in the management and operation of the premises while in possession under said deed, and damages resulting therefrom, there was no error in the ruling of the court in that regard.

It is next contended that the court erred in refusing to give instruction No. 3, offered by the intervener, Kingkade, trustee, and in giving instruction No. 4 by the court.

Instruction No. 3, offered by the trustee, was, in effect, that defendant Cesar had admitted that no legal tender had been made to plaintiff or the intervener of the sums due, and that it was a question of fact for the jury to determine whether or not such tender, if made on or before December 1, 1919, would have been refused.

In this there was no error. While the evi-

456

dence does not show that defendant Cesar actually had the money due and physically offered it to the mortgage company, and the trustee, the uncontradicted evidence is that July 10, 1919, more than 30 days before the interest paying date, which was December 1st, Cesar, by his attorney, wrote the mortgage company a letter, the receipt of which was admitted, to the effect that he, Cesar, had elected to take advantage of the option given him to pay the entire amount due under the mortgage and deed of trust, on December 1, 1919, and would pay off the entire mortgage indebtedness at that time, and in fact offered to do so before that date if agreeable. This letter appears to have been referred to Mr. Harris, attorney for the mortgage company, who replied by letter dated July 12, 1919, wherein he stated: "I am unable at this time to say whether or not arrangements can be made for the taking up of this indebtedness prior to December 1st." This, of course, was no tender and was not intended as such. It was merely notice of the intention of the makers of the notes to avail themselves of the privileges of paying off the indebtedness in full on December 1st, as provided in the notes and deed of trust. The provision therein required 30 days' notice. Again on July 12, 1919, Mr. Harris wrote the attorneys for Dug Cesar, referring to their letter of July 10th, informing them that the amount of the first mortgage indebtedness was then:

Principal -----------------------------$11,000.00
Interest  -----------------------        690.00
                                      $11,690.00

(It is admitted that there was error in the amount of interest, the correct amount being $660.) The letter then stated:

"All of these outstanding bonds are in the hands of people who purchased them from the Oklahoma Farm Mortgage Company, and can be obtained and collected and the first deed of trust released at any time between now and December 1st that the above sum of money is paid at the office of the Oklahoma Farm Mortgage Company in accordance with contract, subject, of course, to such necessary delay as will accompany the obtaining of the bonds from the holders thereof.

"Whenever the company is definitely assured that the money will be available, the papers will be sent for."

Counsel for plaintiffs in error contend that: "Such attitude so expressed seems a positive contradiction of the statement in the court's instruction above that the 'tender was refused.'"

The record further shows that Cesar testified that sometime before December 1, 1919, he went to Oklahoma City and talked with three of the officials of the mortgage company, in an effort to arrive at the exact amount necessary to pay in order to clear the entire mortgage indebtedness, both first and second mortgage (at that time no cross-petition had been filed on the first mortgage indebtedness). He testified that he requested them to "figure it up." "They figured it all up and added down at the bottom, and had added $2,500." He then testified:

"Q. On what? A. The principal and interest. Q. On what? A. On everything I owed them up to date. Q. The principal and interest on the first and second mortgages? A. Yes, sir. Q. Was anything figured on the accrued interest on the first and second mortgages? Was that included? A. I won't say. I don't remember. Q. But suit had been filed on the first mortgage at that time? A. Sure had. Q. None had been filed on the—I mean, on the second mortgage, and none on the first? A. That is right. Q. All right? A. Got it all up, added $2,500, on the bottom, and I asked them what that was for, and they said that was for time and trouble. And I said that was a hell of a lot for time and trouble; and I reached over and got the paper— Q. Did you offer to pay them? A. Yes, I offered to pay them, give them $500 in cash, in addition, to release that. Q. Did you offer to pay that there? A. Yes, sir. Q. Did you have the money there? A. No, sir, but I could have got it there, they said they would release it. Mr. Harris: We object, unless he states which one. The Court: A. Mr. Douthty. I finally reached over and got this paper and said, 'I will take this paper down to McAlester and ask Mr. Andrews, and if he says "pay it," I will do it.' And Mr. Tilghman reached over and got it, grabbed it, and tore it up. And that is when the argument started. Q. Do you remember the date—about the first of December, 1919? A. I think it was before the first of December, because the interest coupon was not quite due quite yet, if I remember right on that, would be $472. Q. Was that offer made to be paid as of that interest paying date? A. Yes, sir. Q. In other words, you offered to pay the principal and interest on the mortgage up to that date? A. Yes, sir. Q. That is the first and second mortgages? A. First and second mortgages. Q. And $500 in addition to what you did owe? A. Yes, sir: $500 in addition to what I owed them. so I could stop the argument and let Mr. Pillows and Mr. Helton have the land."

It is quite true that he did not testify that he at any time actually produced and counted out the money and offered it to them. But in view of the fact that he testi-

fied that three of the officers of the company were present, and that his testimony on that point is entirely uncontradicted, it is apparent that it would have been a vain and useless thing for him to do, in that the company appears to have been insisting upon an additional payment of $2,500 "for time and trouble."

The trial court apparently treated this as a formal tender and refusal to accept, or equivalent thereto.

The rule stated in 62 C. J. 658, and apparently followed in some 43 states, including Oklahoma, is:

"Similarly, a tender is waived where the tenderee makes any declaration which amounts to a repudiation of the contract, or takes any position which would render a tender, so long as the position taken by him is maintained, a vain and idle ceremony."

Plaintiff in error insists that under the record the question of tender was one for the jury, and in support thereof cites the rule stated in 62 C. J. 699. But, as stated therein, it is only "where the facts are in dispute" that the question becomes one for the jury. The rule and cases cited in support thereof cannot be said to be applicable. It is clear that plaintiffs in error had an opportunity to collect every cent laid out by them, including the commission notes and mortgage, and every cent due them under the terms of their contract, and refused to accept same, and insisted upon the payment of a sum far in excess of the amount actually due on December 1, 1919. They are therefore in no position to complain of the instruction given.

Plaintiffs in error insist that the tender, if made, should have been kept good by tender into court.

The rule is that a tender need not be kept good when it appears that the tender made is futile, or where it appears that it will not be accepted. 62 C. J. 792-3; Bogue v. Roeth (Cal.) 276 P. 1071.

It is next contended that the court erred in directing a verdict for defendant Helton in the sum of $1,235 and $810 interest, making a total of $2,045. The court apparently limited the amount of the principal recovery to $1,235 because that was the amount claimed in the cross-petition and prayer and no application was made to amend.

It appears that the evidence of defendant Helton was without contradiction. If he was entitled to recover anything, his damages, as itemized by him, amount to at least $1,520. There is probably error in this in that one item claimed is $300 for lumber that went into a house erected by him on the premises. Another item is for the house completed $350, for the lumber, thus reducing the damage actually proved to about $1,220, or $15 less than allowed by the court. Plaintiffs in error assert that the amount actually proved was $835, but with this contention we cannot agree. Complaint is also made as to the item of interest. The contention is that if the amount proved was $1,235, the interest allowed was not enough rather than too much. They say that interest on $1,235 from April 28, 1919, the date claimed, would have been $1,031.38, instead of $810, allowed. There is some suggestion that April 28, 1919, is not the proper date from which to compute interest.

Computing interest at 6 per cent. from June 14, 1921, the date intervener alleges he went into possession of the premises, and the latest date defendant Helton could have had possession of that part he claims to have bought, down to date of the trial, the interest on $1,220 would be something over $840. As a whole, then, the judgment is for some $15 less rather than more than the proof warranted. The small discrepancies between the amount of principal and interest properly allowable and that allowed does not require or justify a reversal on that account.

Substantially the same contention is made as to the verdict in favor of defendant Pillows. His case differs materially from that of Helton, and for reasons hereinafter stated the amount allowable becomes immaterial.

Next it is contended that the judgment in favor of Helton and Pillows is contrary to law because their claims are based on alleged oral agreements to release the mortgage liens, which agreements, if made, were violative of the statute of frauds.

The contention is not sustained as to the judgment of defendant Helton. The uncontradicted evidence is that the plaintiffs in error agreed to release that portion of the land sold to Helton provided he would pay the amount of the purchase price thereof upon the mortgage indebtedness. This he agreed to do, and it is admitted that he paid the sum of $69, which was applied upon the interest on bonds or notes representing the indebtedness secured by the deed of trust. The uncontradicted evidence also shows that Helton, relying upon the agreement, went into possession of the premises and made lasting and valuable improvements thereon.

If it is conceded that the statute of frauds is applicable to an agreement to release a mortgage lien, it has been held by this court that an oral contract for the purchase of land, where payment of the purchase price is made, and in some cases where a part only is paid, and the vendee goes into possession of the property and makes valuable improvements, the contract is thereby taken out from the provisions of the statute of frauds and is enforceable. McMasters v. Goss, 88 Okla. 115, 212 P. 304; Boese v. Childress, 83 Okla. 60, 200 P. 997; Merfeld v. Anderson, 97 Okla. 208, 224 P. 161; Coghill v. Hill, 106 Okla. 215, 233 P. 726.

As to the question of possession, the plaintiffs in error had no right of possession and therefore could not give defendant Helton the right to enter into and hold possession, and to that extent the authorities holding, taking and holding possession under the oral agreement as an element removing the contract from the statute of frauds, are not applicable here. But there can be no doubt that the plaintiffs in error accepted the $69 paid by Helton under said agreement, and knew all the time that he had gone into possession and placed valuable improvements on the property relying upon the oral agreement.

As to defendant Pillows, he paid nothing whatever under the agreement to release, but did go into possession and place valuable improvements on the land purchased by him, apparently relying upon an oral agreement with plaintiffs in error entered into by defendants Cesar and Helton as his agents.

The question of whether an oral agreement to release a mortgage on real estate is within the statute of frauds and void is one upon which the authorities appear to be in hopeless conflict. In 27 C. J. 218, it is said:

"It is also held that an oral contract to execute a release is valid, but the weight of authority is to the contrary on the proposition."

Vice Chancellor Bentley, in Degheri v. Carobine (N. J.) 135 Atl. 518, in discussing the proposition, said:

"An examination of the decisions in other jurisdictions shows them to be in a state of the wildest confusion."

Then, after citing the rule stated in C. J., supra, he said:

"An examination of the authorities cited to sustain the text is most unsatisfactory, and some of them are in direct conflict with it."

The distinction between a mortgage which passes the fee, as they did at common law, and those which merely create a lien, as is now the statutory rule in most states, including Oklahoma, is pointed out, and the rule is said to be that in case the fee is passed by the mortgage an estate is created which may be only efficiently dealt with by a written instrument. The Vice Chancellor then said:

"But whatever the rule should be, in a case in which there is a denial of the making of an oral promise to release all or part of mortgaged premises from the lien of a mortgage, it is difficult to perceive why the statute should be a bar to compelling one to carry out an honest agreement into which he had entered with another and which he admits having made. The statute of frauds was designed to protect the innocent from false claims that were made and enforcement of which was secured through perjury."

The oral contract to release a part of the mortgaged premises, with a slight modification thereof was upheld.

In Hemmings v. Doss (N. C.) 34 S. E. 511, it is said:

"The statute of frauds (Code § 1554) requires only contracts to 'sell and convey' lands or interest therein to be in writing, and hence a verbal agreement to release a mortgage is not within the statute."

This statement appears to be in effect that such an agreement does not deal with an interest in real estate, or at most does not relate to a sale or conveyance of an interest in real estate.

Defendants cite and rely in part upon rule stated in 27 C. J. 217:

"A vendor's lien retained in a deed may be waived or released by parol. And a parol agreement to cancel a vendor's lien notes is valid," etc.

In support of the text are cited Atterberry v. Burnett (Tex. Civ. App.) 130 S. W. 1028; Bright v. Briscoe (Tex. Civ. App.) 193 S. W. 156; Rogers v. Gennett Lbr. Co., 154 N. C. 108, 69 S. E. 788.

An examination of these cases will disclose that where such contracts were upheld they were executed, or partly executed, or were contracts based upon separate valuable consideration which had been paid.

It may be said that the contrary has been held in Colorado, Maine, Vermont, and New York. But as pointed out in Degheri v. Carobine, supra, in some of the cases cited in support of the rule the question was discussed and the case decided upon other

points. The same may be said of some of the cases on the other side. So in fact there is doubt as to the weight of authority on the subject, and it may further be said that it is not entirely clear as to which is the better rule.

It is our judgment that the question depends upon whether or not a mortgage on real estate creates (not an estate) an interest in the real property covered thereby.

In Sleeth v. Sampson (N. Y.) 142 N. E. 355, it is held that a mortgage is a conveyance of "an interest in real property, within the law providing that an estate or interest in real property cannot be created, granted, or assigned unless by operation of law or by deed or conveyance in writing."

It is well settled in this state that a mortgagee has such an interest in the mortgaged property as to require notice of application for a tax deed to be served upon him in the same manner as upon the owner before the lien may be extinguished by the issuance of a tax deed.

It is also held that the mortgagee has such an interest in the real property covered by his mortgage as to require that notice be given him of a proceeding to condemn the property under the law of eminent domain, before his interest therein may be extinguished. It is clear, then, that a mortgagee has, by virtue of the mortgage, "an interest in" the real estate covered by his mortgage. It is this interest that is being dealt with in any agreement to release a part of the mortgaged property from the mortgage lien and extinguish the lien to that extent.

We are convinced that there is better reason for holding such agreements are within the statute of frauds. To hold otherwise would open the door to evils the statute was designed to prevent. It would permit unscrupulous mortgagors to conspire with others representing themselves to be prospective purchasers of portions of the mortgaged premises, and set up false claims of oral agreements to release the mortgage in part, and thereby destroy or greatly impair the security.

By this we do not intimate that in this case there is any false claim or that the parties or any of them were not acting in good faith, for there is no substantial denial that the agreement was made.

It may be true in many cases to apply the statute of frauds to such agreement would be a "bar compelling one to carry out an honest agreement into which he entered with another which he admits, or does not deny having made."

The point is that protection of the innocent from false claims, for which the statute of frauds was designed, would be taken away by adherence to the other rule. The statute of frauds should apply, and we so hold.

In this case there can be no injustice to defendant Pillows by applying the statute, for the record discloses that he has been almost if not wholly repaid by Cesar for all improvements he placed upon the land.

Relative to such repayment by Cesar, Pillows testified: "He paid every dollar of it, but the one hundred dollars, and I moved to Texas * * * and in 1920, I believe in September, I came back here and Mr. Cesar paid me that other one hundred dollars."

He testified, however, that he had an agreement with Cesar that he should prosecute his claim and if successful he was to repay Cesar. In other words, that he was prosecuting his claim in this action for the benefit of Cesar.

It is contended that the verdict of the jury finding that Andrew Kingkade, trustee, did not use due care in the use and operation of the property, is not sustained by sufficient evidence.

This contention cannot be sustained. There is abundant evidence to support the verdict of the jury on that issue.

The next contention is that the court erred in rendering judgment in favor of Cesar upon the verdict of the jury.

In this, when taken in connection with the judgment canceling the entire mortgage indebtedness, there is merit.

The question submitted to the jury was what amount, if any, the property had been damaged by want of due care on the part of the mortgagee in possession.

The jury answered this by their verdict, wherein the jury found that the trustee did not use due care in the operation of the property while in his possession and "by reason thereof said property has been physically damaged during his possession and use thereof in the sum of $3,000."

The court either interpreted their verdict to mean that the property had been damaged as a result of the negligence of the trustee in the sum of $3,000 in excess of the mortgage indebtedness, or made a separate finding of his own to that effect.

460

The verdict is not subject to that interpretation. It says plainly that the property has been physically damaged in the sum of $3,000.

If the parties were entitled to a jury trial on this issue, and there is no contention that they were not, they should be bound by the verdict, and the court had no authority to make an independent finding increasing the amount of damages more than $10,000.

Under the record in this case we are inclined to hold that the question of negligence of the trustee while in possession and the amount of damages resulting from such negligence, if any, were questions of fact for the jury. The result is that the judgment rendered in favor of defendant Cesar is excessive and contrary to law.

There is some contention that the court erred in its instructions covering the question of negligence. But there was no proper objection and exception saved. In fact the instruction given on the question was as requested by the plaintiffs in error.

It is next contended that the court erred in admitting evidence concerning damage to a ten-acre tract which was not covered by the mortgage and was not included in the sheriff's deed. The contention might be well taken except for the fact that the evidence shows that the trustee took and held possession of this ten acres of land and collected the rents and profits therefrom.

The trustee admitted in his pleadings that he was a mortgagee in possession, and made no exception as to the ten acres in question. In such circumstances, we do not feel justified in reversing the judgment and remanding the cause for the error, if any, in the admission of such evidence. Whether he held this ten acres as a mortgagee in possession or as a mere trespasser could make but little difference in the ultimate result.

There is some contention as to error in refusing certain instructions offered by plaintiffs in error, but upon examination thereof we find no error in such refusal.

Finally it is contended that the court erred in allowing defendants' attorney fee in the sum of $4,500.

Section 11021, O. S. 1931, provides:

"In an action brought to enforce any lien the party for whom judgment is rendered shall be entitled to recover a reasonable attorney's fee to be fixed by the court, which shall be taxed as costs in the action."

There was no error in allowing an attorney's fee for defendants, if the judgment

entered be allowed to stand. But the right to attorney's fee must depend upon the final judgment.

The view we take under the record made is that the judgment as between plaintiffs in error and defendant Cesar should be for plaintiffs in error.

The judgment in favor of defendant Helton should be, and is hereby, affirmed, to be paid out of money in the hands of the trustee admitted to be $5,207.83.

The judgment in favor of defendant Pillows should be, and is hereby, reversed.

The judgment canceling the sheriff's deed is affirmed.

The judgment, in so far as it cancels the notes, mortgage, and deed of trust in full, should be, and is hereby, reversed, with directions.

The cause is remanded, with instructions that the judgment in favor of defendant Helton remain intact except it be against Andrew Kingkade, as trustee; that the judgment in favor of defendant Pillows be set aside and judgment rendered in favor of plaintiffs in error as to the Pillows claim. That judgment be rendered in favor of Andrew Kingkade and against defendants Dug Cesar and Myrtle Cesar on the principal notes and mortgage of $11,000, with interest thereon to December 1, 1919, and no longer, less the sum of $3,000, with interest from the date of the verdict, less the further sum of $5,207.83, with interest thereon from date of verdict, the amount admitted and found to be in the hands of the trustee as net income from the premises, same to be without allowance for the amount directed to be paid to defendant Helton, the judgment so rendered to be a first lien on all the property covered by the deed of trust, except the ten acres released therefrom. That judgment be rendered in favor of the Oklahoma Farm Mortgage Company or its receiver for the amount of the second mortgage, notes secured thereby, with the unpaid interest thereon down to December 1, 1919, and that said judgment be declared a second lien on said premises, and for such further proceedings as may be consistent with the views herein expressed.

The costs in this court are assessed, one-half against plaintiffs in error, and one-half against defendant in error Dug Cesar.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur. BAYLESS, J., absent.