## PEPIS v. RED BANK OIL CO.

No. 21685.   Jan. 8, 1935.

Samuel A. Boorstin, for plaintiff in error.

Thrift & Davenport, for defendant in error.

ANDREWS, J. This is an appeal from a judgment of the district court of Tulsa county rendered in favor of the defendant in error, as the defendant, and against the plaintiff in error, as the plaintiff. The parties will be referred to as plaintiff and defendant, as they appeared in the trial court.

The plaintiff filed his amended petition, alleging that the defendant entered into a contract in writing on February 21, 1925, with F. J. Searight, whereby the defendant agreed to purchase from Searight an oil and gas lease covering the N.½ of N.E.¼ of section 1, township 9 N., range 5 E., at an agreed price of $100 per acre, $2,000 to be paid when the title had been approved by the defendant's attorney, $2,000 to be paid when the well reached a total depth of 3,000 feet, and $4,000 to be paid when the well reached a depth of 4,000 feet, unless oil or gas was discovered in commercial quantities; that the title was approved and the lease conveyed to the defendant and the defendant drilled an oil and gas test in the southwest portion of the 80 acres to an approximate depth of 4,000 feet without discovering oil or gas in paying quantities; that the defendant paid Searight on approval of the title the sum of $2,000 as per terms of the contract; that the well referred to in the contract was drilled to a depth of more than 3,000 feet on or about July 29, 1927, whereupon the further sum of $2,000 became due and payable under the contract; that the $4,000 payment due under the terms of the contract when the well therein referred to had reached a depth of 4,000 feet became and was due; that said test well, which was upon an adjoining tract, the S.E.¼ of the N.E.¼ of section 1, township 9 north, range 5 east, had been drilled to more than the required depth of 4,000 feet, and was completed about October, 1928, as a well producing oil and gas in large quantities.

It was further alleged in the plaintiff's petition that on September 28, 1926, the contract was assigned by Searight to the plaintiff and notice of assignment was given to and approved by the defendant. The plaintiff asked for judgment for $2,000, with interest from July 29, 1927, and for $4,000, with interest from October, 1928. A copy of

190

the contract to drill between the defendant and Searight and the approval of the transfer of same by the defendant were made exhibits to the plaintiff's petition.

The defendant filed his answer denying generally, and alleged that on or about February 18, 1925, F. J. Searight was engaged in drilling a well for oil and gas in the northeast corner of the south half of the northeast quarter of section 1, township 9 north, range 5 east, and was the owner of an oil and gas mining lease covering the adjoining north half of the northeast quarter of the section for the sum of $8,000, payable $2,000 when title to the lease was approved by the defendant's attorney, $2,000 when the well then being drilled by Searight should reach a depth of 3,000 feet, and $4,000 when said well should reach a depth of 4,000 feet, unless oil or gas should be discovered in commercial quantities at a lesser depth; that there was no prospecting for oil and gas in the immediate vicinity of the land at the time and the nearest known producing sand was found at a depth of approximately 3,500 feet; that it was orally agreed between Searight and the defendant that the well then being drilled by Searight offsetting the north half of the northeast quarter named would be a test well to test the known producing sand in the general vicinity of said land generally found at a depth of approximately 3,500 feet; that the lease purchased by the defendant was worth not exceeding $2,000 without the promise of Searight to drill the offset well; that at the time of the purchase of the lease by the defendant, Searight orally agreed that upon the approval of the title and the payment of the $2,000, no further sum would be payable by the defendant, except upon performance of the conditions agreed upon to drill the well below the depth of 3,500 feet; that on November 24, 1925, the defendant was advised by Searight that the well he had been drilling had been or was to be abandoned and a well started on a new location, and requested a new contract for payment of the same sums of money in the event the second well should be drilled as had been agreed to drill the original well; that the defendant delivered to Searight at his request a letter confirming the defendant's consent upon the terms stated in the letter, a copy of which is exhibit "C" and made a part of the answer. It was further alleged in the answer that the principal inducement in purchasing the lease was the agreement by Searight to drill the test well offsetting the acreage purchased, which was being drilled in the northeast corner of the south half of the northeast quarter of the section; that the well was not drilled with diligence, and during the summer of 1927 the test well was abandoned and the hole was not in a condition so that it could have been drilled to the depth of 4,000 feet in order to constitute a test well under the terms of the contract between Searight and the defendant; that the test well was never completed and was never a test to the depth of 3,000 feet or 4,000 feet as required by the contract; that the work done on the well was of no value or benefit to the defendant and the contract of purchase of said lease was never complied with, and that the defendant has been and is discharged from the obligation to pay any additional sums provided for in the contract; that the defendant admits it drilled a well for oil and gas in the southwest corner of the land on which it bought the lease, and expended thereon approximately $75,000; that same was drilled more than 4,000 feet and was a dry hole; that because of the failure of Searight to drill the test well, the defendant was compelled to and did expend other large sums of money making the test. The defendant pleads the performance of every obligation imposed upon it by reason of the contract for the purchase of the lease, and asks that the plaintiff take nothing.

It is plainly shown from the plaintiff's petition that this suit was brought on an entire contract, and that it was not a suit on the basis of quantum meruit. It was the contention of the defendant that the contract requiring Searight to drill to 4,000 feet, unless oil or gas in paying quantities was discovered at a lesser depth, was an entire contract.

The letter contract of purchase addressed to Searight by the defendant, upon which this suit was brought, is in part as follows:

"This will confirm verbal agreement between Mr. Ross Sigler and Mr. Homer T. Lamb of even date. This agreement was as follows: Red Bank Oil Company agrees to purchase from you the north half of the northeast quarter of section one (1), township nine (9), range five (5) east, Seminole county, Okla., at the agreed price of $100 per acre, payment to be made in the following manner and upon the following conditions:

"Two thousand ($2,000) dollars when title to same has been approved by attorneys for this company.

"Two thousand ($2,000) dollars when the well has reached a total depth of 3,000 feet, and.

"Four thousand ($4,000) dollars when the well has reached a depth of 4,000 feet unless oil or gas is discovered in commercial quantities at a lesser depth. * * *

"It is our understanding that at the present time there is a well drilling in the northeast corner of the south half of the northeast quarter of section 1. We will request that at various times you give us what information you have concerning the progress of this well and any other information regarding this well that will be of interest or benefit to this company. * * *"

The plaintiff contends that the contract of purchase does not show any obligations on the part of Searight to drill a test well.

The answer of the defendant, as shown, specifically alleged that Searight was engaged in drilling a well in the northeast corner of the south half of the northeast quarter of the section at the time he proposed to sell the defendant a lease and orally proposed to the defendant that he would cause the well to be drilled to an approximate depth of 4,000 feet, unless oil or gas was found in paying quantities at a lesser depth, and would sell the defendant the oil and gas mining lease covering the north half of the northeast quarter, and that it was further orally agreed that upon approval of the title to the lease and the payment of $2,000, no further sums would be payable by the defendant except upon the performance of the conditions agreed upon, to drill the well below the 3,500 foot depth, that being the only known producing sands in the vicinity of the land.

The defendant submitted its defense and tried its suit upon the theory that the letter contract of purchase addressed by the defendant to Searight, confirming the agreement, was only a part of the contract entered into between the parties, and that the failure on the part of Searight to carry out his obligations under the oral agreement was a breach of the contract.

The plaintiff predicates error on the part of the court in allowing oral testimony to explain the contract, and in his first proposition contends as a proposition of law that, "In the absence of fraud, accident or mistake, parol evidence is not admissible to vary or add to the terms of a written contract, and a defendant will not be permitted to plead, and will not, in pursuance to such pleading, be permitted to introduce evidence and prove that it was 'orally agreed' that any additional burden or obligation was assumed by the opposite party

to a contract, contradictory to the written agreement and adding additional burdens to the responsibility of such opposing contractual party." In support of that contention the plaintiff cites sections 9450 and 9463, O. S. 1931, which provide:

"A contract is either express or implied."

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, subject, however, to the other provisions of this article."

As a general proposition of law, the plaintiff's contention is correct and is supported by the statutes cited. The rule, however, will not prevent a parol contract being made at the time of the execution of the written agreement concerning the same subject-matter, provided it is separate and independent and in no way conflicts with or contradicts the written agreement. According to the plaintiff's contention the oral agreement does not conflict with the written agreement. In his brief the plaintiff says:

"This letter did not contain any covenant or agreement of Searight that he, Searight, would personally drill the well or would obligate himself definitely to see that it was drilled, but he merely agreed in his letter to give what information he had concerning the progress of this well, or any other information that might be of interest to the Red Bank."

The oral agreement was proved as alleged, and the court found as a matter of fact that the letter did not constitute the whole contract between the defendant and Searight, but that the letter confirmed the oral agreement between Homer Lamb, the president of the defendant company, and Ross Sigler, the agent of Searight, relative to the purchase of the lease and terms of payment of same. It was upon that theory that the court admitted the testimony to prove that the parties had an independent oral contract concerning the same subject-matter, and which the court held was not in contravention of the terms of the written instrument.

The witness Sigler, the agent of Searight in the sale of the lease, testified that Searight said he would drill the well to 4,000 feet, and that the witness so informed Mr. Lamb, the president of the defendant. The witness further testified that Searight agreed to take $2,000 cash and $2,000 at 3,000 feet and the balance at 4,000 feet.

When all of the evidence relative to the

purchase of the lease is considered, it is clearly shown that the drilling of the test well, offsetting to an extent the land upon which the defendant purchased the lease, was one of the primary considerations in the purchase of the lease and the price to be paid for same. If, as claimed by the plaintiff, there was no promise on the part of Searight to drill the test well, then the letter contract from the defendant to Searight expressing the terms upon which the lease was purchased is itself ambiguous when it states, "two thousand ($2,000) dollars when the well has reached a total depth of 3,000 feet and four thousand ($4,000) dollars when the well has reached a depth of 4,000 feet." What well was referred to, and how could the letter confirm an agreement as to terms of payment according to progressive depths of the well if, in fact, there was no agreement on the part of Searight to drill the well? If the letter contract was ambiguous or uncertain, then, under the provisions of section 9473, O. S. 1931, as follows:

"If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it"

—oral testimony could be introduced explaining what well was referred to.

In Tyer v. Caldwell, 114 Okla. 13, 242 P. 760, this court held:

"Section 5052, C. O. S. 1921, providing, 'If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it,' authorizes parol evidence as to prior or contemporaneous conversations, for the purpose of determining the meaning and intention of the parties in the use of words employed in the written contract, but does not authorize the introduction of parol evidence to vary the terms of a written contract plain in their meaning, nor to show that the intent of the parties differed from that implied in the words used."

Unless it can be said that the letter from the defendant to Searight constituted the entire agreement and understanding of the parties, the testimony relative to the oral contract did not tend to add to or contradict or change the terms of the written contract, but is in the nature of explaining or interpreting the language contained in the written contract, except as to the manner of payment, and was within itself a contemporaneous contract.

In Mackin v. Darrow Music Co., 69 Okla. 1, 169 P. 497, this court, having under consideration a similar question to the one here presented, held:

"While parol testimony is inadmissible to change or contradict the terms of a written contract, yet a parol contract may be made between the parties contemporaneously with the execution of the written agreement, providing it is separate and independent, and its terms in no way conflicting with or contradictory to the written stipulation. Thus, where the plaintiff sold to the defendant a piano at a stipulated price to be paid a certain amount down and the balance in installments, and the plaintiff retaining title to the same until the full amount was paid, the terms of the sale being evidenced by a written contract, it is competent for the defendant to show by parol evidence in an action for the balance due on the purchase price that the plaintiff and the defendant entered into a contemporaneous parol agreement whereby it was agreed that the defendant might pay for the piano in hauling for the plaintiff, and that the plaintiff breached the parol agreement by refusing to furnish the defendant hauling as provided for in the parol agreement, as the parol agreement did not contradict or vary the written contract, except as to the manner of payment, which could be shown by parol."

The written contract in that case provided for payment in installments, $30 cash and the balance to be paid $10 each month.

In Packard Oklahoma Motor Co. v. Funk, 117 Okla. 96, 245 P. 571, this court held:

"While parol testimony is inadmissible to change or contradict the terms of a written contract, yet a parol contract may be made between the parties contemporaneously with the execution of a written agreement, providing it is separate and independent, and its terms are in no way conflicting with or contradictory to the written stipulation, and where the petition alleges a contract partly in writing and partly parol, and such petition does not show upon its face that the alleged parol portion of the agreement is in conflict with, or contradicts, or is repugnant to the written contract, such petition is good as against demurrer urged upon the ground that it is an attempt to alter or change the terms of a written contract by a contemporaneous oral agreement."

Under the plaintiff's second proposition, it is stated that "all of the essential terms of a written contract required to be in writing by the statute of frauds must be in writing and cannot be supplied orally."

The record shows that the question of the statute of frauds was neither raised in the pleadings nor urged or relied upon in any

manner in the trial of the cause, and the plaintiff will not be heard to urge this question for the first time on appeal to this court. Collins v. Way, 88 Okla. 143, 211 P. 1038. The record further shows that a part of the consideration was paid and the defendant took possession of the lease and developed the same. In view of such facts, the statute of frauds would be inapplicable. Boese v. Childress, 83 Okla. 60, 200 P. 997. If it be conceded that the sale of the oil and gas mining lease was governed by the provisions of the statute of frauds, and the provisions so required have been performed, if the part remaining to be performed is merely the payment of the purchase price under certain conditions agreed upon, such promise and provisions are not governed by the statute of frauds and were not required to be in writing. MacThwaite Oil & Gas Co. et al. v. Schulte et al., 123 Okla. 231, 253 P. 53; Merfeld v. Anderson, 97 Okla. 208, 224 P. 161.

Under the plaintiff's third proposition, it is again contended that the letter of February 21, 1925, from the defendant to Searight, referred to as the contract letter, imposed no personal obligation upon Searight to drill the offset well, and it is further contended that the drilling of such offset well by any other person will fix and mature the respective installment payments to be paid. That presents the question as to whether or not the contract was breached, and, if so, by whom.

In order properly to consider that proposition, it will be necessary to review some of the transactions relative thereto disclosed by the record. It is shown that prior to the time the contract was written, February 21, 1925, confirming the agreement to purchase the lease, Searight was having a well drilled under contract to a depth of 4,000 feet in the northeast corner of the south half of the northwest quarter, adjoining the land upon which the defendant later purchased the lease.

The defendant alleged in its answer and proved that Searight orally agreed to drill that well to an approximate depth of 4,000 feet unless oil or gas be found at a lesser depth.

It is shown that very little progress had been made on that well, and in the latter part of 1925, when the hole was approximately 550 feet deep, Searight skidded the derrick to a new location in the same vicinity, and asked the consent of the defendant in applying the contract to the second

well. The defendant wrote a letter to Searight on November 24, 1925, calling his attention to the delay in drilling the well. On May 17, 1926, the defendant wrote a letter to Searight agreeing to let the agreement pertaining to the first well apply to the second well. Work on the well was not resumed until April 20, 1926.

Sometime thereafter a receiver was appointed by the federal court over the lease where Searight was drilling; but the drilling was allowed to continue until the well was approximately 3,000 feet deep, and it was abandoned. The testimony shows that the hole was ruined, that it had caved, and was worth nothing further than the pipe in same. The Skelly Oil Company had purchased from the receiver the lease on which the Searight wells had been partly drilled and abandoned. The Skelly Oil Company upon examination found that the well approximately 3,000 feet abandoned by the receiver could not be drilled to a greater depth. The Skelly Oil Company commenced to drill a well near the site where Searight had started his first well, and the well was completed on December 24, 1928. The well was drilled by the Skelly Oil Company in practically three months' time. It is shown, as alleged in the plaintiff's original petition, that the defendant had spent practically $75,000 in drilling a well on the southeast corner of its lease, which proved to be a dry hole.

It is contended by the plaintiff that, since there was no personal obligation on the part of Searight to drill the well to the depth of 4,000 feet, the contract by Searight had been complied with when the Skelly Oil Company completed its well to the same depth in a location near that of the original Searight well, even though the Skelly well was completed nearly four years after Searight agreed to drill the well to a depth of 4,000 feet as a test well for that vicinity.

We think the trial court committed no error in finding that the drilling of such a test well by the Skelly Oil Company in December, 1928, was not a performance of the personal obligation of Searight to drill the well under the oral agreement, neither was the Skelly well completed until long after a reasonable time had expired. If there was no actual time fixed for the completion of the Searight well, then it should have been completed in a reasonable time. Thomas v. Chapman, 119 Okla. 249, 249 P. 1104.

In the plaintiff's fourth proposition of

error, it is contended that a failure to pay an installment due on a contract is held to be such a breach as to absolve the other party from performance, and where a defendant has failed to comply with the conditions of payment on its part, it cannot insist that the plaintiff should proceed and complete the contract before it makes. further payment due under the contract. As an abstract proposition of law the contention probably would be sound, but it does not apply to the facts in this case. Neither is that the theory upon which this suit was brought and tried. In the plaintiff's petition he alleged a full compliance with the agreement, and alleged that $2,000 was due because the well was drilled to a depth of 3,000 feet on July 29, 1927, and that $4,000 was due because the test well had been drilled to more than the required depth of 4,000 feet. The breach of the contract by the defendant in not paying $2,000, and the absolving of Searight from any duty to drill further, were not alleged as any part of the basis of the plaintiff's cause of action. Where a cause has been submitted to the trial court upon a particular theory, and from the judgment rendered appeal is prosecuted to the Supreme Court, neither party will be allowed to change the theory of his case and present it here on a different theory than the theory upon which it was presented to the trial court. Security Nat. Bank of Tulsa v. Cain et al., 126 Okla. 202, 259 P. 572.

It is also shown that the well had been abandoned some months before any demand was made on the defendant, and it cannot be contended that Searight did or had any right to abandon the well because of any breach on the part of the defendant. This suit was brought on an entire contract, and it certainly cannot be said that a stipulation in the contract for the payment of $2,000 at a depth of 3,000 feet meant a payment in any event, even though the well had been abandoned and was impractical of being drilled to a depth of 4,000 feet, which was the agreed depth required for the test well. It must have been in the minds of the contracting parties that when the $2,000 was to be paid at 3,000 feet, the contract to drill to 4,000 feet would be complied with, and if it was to be complied with, the hole must be in a condition to have been drilled to the 4,000 feet depth.

This court has held that where one alleges full compliance in his petition, and the answer denies full compliance and points out wherein the contract was not complied with, it is error to permit the plaintiff to reply admitting that the well was not drilled according to contract, but alleging that the changes were made with the defendant's consent and agreement. Snyder v. Noss et al., 99 Okla. 142, 226 P. 319.

In the plaintiff's fifth proposition, it is contended that "the words of an instrument shall be taken most strongly against the party employing them." In other words, the letter from the defendant to Searight accepting the terms of the sale of the lease should be strictly construed against the defendant. There is no dispute over the proper construction of the letter from the defendant to Searight. The controversy is over the fact that the defendant was permitted to prove a parol agreement entered into at the time, and which the court held was a part of the contract entered into between the parties.

The plaintiff, the assignee of Searight, cannot claim all of the rights and benefits which Searight might have had and received had he drilled the test well as he agreed to do, and at the same time assume none of the obligations and burdens placed upon Searight.

It is the well-established rule of this court that where a law action is tried to the court, and there is a conflict in the evidence on the issues joined, the determination of the questions of fact therein is for the trial court, and the Supreme Court, on appeal, will not weigh the evidence or determine as to the credibility of the witnesses, that question being one for the trial court. Adams v. Hansford, 130 Okla. 155, 265 P. 762. Where the evidence reasonably sustains the findings and judgment of the court, or where the evidence is conflicting, it will not be disturbed by this court. Wagg v. Herbert, 19 Okla. 525, 92 P. 250; Villines ex ux. v. Conatser, 151 Okla. 144, 2 P. (2d) 1024.

The judgment of the trial court is affirmed.

RILEY, C. J., and SWINDALL, McNEILL, OSBORN, and WELCH, JJ., concur. CULLISON, V. C. J., not participating. BAYLESS and BUSBY, JJ., absent.