ERWIN, executor, *et al. v.* HARDIN *et al.*

No. 12327. October 14, 1938. Rehearing denied December 3, 1938.

*Joseph E. Webb, W. W. Armistead, Clara E. Smith,* and *Shackelford & Shackelford,* for plaintiffs.

*Hamilton McWhorter, Williams & Freeman,* and *W. D. Tutt,* for defendants.

Russell, Chief Justice.   A petition was filed in Oglethorpe superior court by John F. Erwin, Thomas E. Erwin, and Mrs. Janie Hancock (children of Thomas J. Erwin, deceased), Mrs. Fannie Erwin (wife of John F.), Mrs. Floy Erwin (wife of Thomas E.), and John F. Erwin as executor of the will of Thomas J. Erwin, against T. E. Watkins, sheriff of Oglethorpe County, Claude Culbertson, and Arnold Rogers, of Oglethorpe County, and H. H. Hardin and Mrs. Katie Mae Hardin, of Monroe County, praying for injunction, specific performance, and other equitable relief. A general demurrer was filed by the sheriff; a joint demurrer on general and special grounds was filed by Culbertson and Rogers; Hardin filed a general demurrer; Mrs. Hardin filed a general and special demurrer, and filed a separate demurrer on the ground of lack of jurisdiction of the superior court of Oglethorpe County as to her.   The court by five separate orders sustained all the demurrers, and dismissed the action.   The plaintiffs excepted.

Substantially the petitioners alleged: Thomas J. Erwin died testate on November 19, 1932, his will devising his property to his three children (named above) for life, with remainder to their children.   At the time of his death said testator was indebted to the defendant Mrs. Hardin in the sum of $3000, evidenced by his

unsecured promissory note for that amount, due December 10, 1927. Before July, 1934, the defendant H. H. Hardin, acting as agent for his wife Mrs. Katie Mae Hardin, approached the executor and heirs of Thomas J. Erwin regarding means of paying said indebtedness. At said time the executor had no money with which to pay said indebtedness, and neither the executor nor the heirs could borrow money on the real property of the estate, since the same was devised in remainder to the children of said heirs. H. H. Hardin, and John F. Erwin as representative of the heirs of the deceased, agreed upon the following plan for paying said indebtedness: that Mrs. Hardin should sue on the note to judgment, and the judgment should be levied on the land of the deceased and it should be bid in by Mrs. Hardin; that prospective bidders would be asked not to bid on said property; that when this should be done said heirs were to employ a surveyor and divide said land into three tracts, and Mrs. Hardin agreed to give to the wives of two of the heirs and the husband of the other heir bonds for title for his or her tract, and he or she was to assume his or her pro rata share of the amount of said judgment; that each of the obligees in said bonds for title would apply to the Federal Land Bank of Columbia for a loan sufficient to pay the amount due Mrs. Hardin, but she, should said loans not be secured, would carry the amounts due to her by said heirs as long as if said loans had been secured from the bank. In accordance with said agreement said heirs continued in possession of the land as their own, cultivating it, returning it for taxes, and living on it, and in accordance with said agreement on April 25, 1934, they employed Griffeth, a surveyor, to draw plats for each heir's share. The plats drawn for Mrs. Janie Hancock, John F. Erwin and Thomas E. Erwin respectively contained 192.15, 222.93, and 176 acres, embracing all of the lands which had been sold by Mrs. Hardin under said agreement. In pursuance of said agreement Mrs. Hardin procured judgment on said note, and execution issued thereon was levied on said lands, and at sheriff's sale they were bought in by her for less than one fourth of their value. Applications were made to the Federal Land Bank for loans as agreed, which applications were refused; whereupon said heirs approached the husband and agent of Mrs. Hardin, and asked that she deliver bonds for title in accordance with her agreement and accept of the obligees therein notes aggregating the

amount due Mrs. Hardin on her judgment, which Mrs. Hardin refused and still refuses to do. "That the said Claude Culbertson, acting under the instructions of Mrs. Katie Mae Hardin, has entered upon a portion of the land which was set off and platted to Thos. E. Erwin, and has begun to plow up the same, and has moved defendant Arnold Rogers into one of the houses on said Thos. E. Erwin's part of the land, and, although forbidden to enter upon said land as the renters of the said Mrs. Katie Mae Hardin, has continued to plow up the same, and the defendant Arnold Rogers continues to occupy the tenant-house on said land. That the said Claude Culbertson, having rented all of the T. E. Erwin lands, is now attempting to attorn to the said Mrs. Katie Mae Hardin." Attached to the petition were copies of the sheriff's deeds to Mrs. Hardin. Petitioners prayed that the defendants Arnold and Culbertson be enjoined from entering on said lands or attempting to cultivate them; that Mrs. Hardin and her agents be enjoined from interfering with petitioners' possession of said lands; that Mrs. Hardin "be required to comply with her agreement and contract, and that she execute bond for titles and receive notes as hereinbefore set out from each of said parties to said agreement;" and for general relief.

The petitioners seek a decree of specific performance of an alleged contract whereby Mrs. Hardin agreed to accept from Mrs. Floy Erwin, Mrs. Fannie E. Erwin, and W. T. Hancock notes aggregating the amount of the judgment obtained by Mrs. Hardin against the executors of the will of Thomas J. Erwin, and that she would carry said notes "for as long a period of time and at the same annual payments as would be granted to each one of said heirs if his application to the Federal Land Bank of Columbia was accepted, except that the rate of interest was to be eight per cent. interest instead of five per cent.," and that she would execute to the persons signing the notes bonds for title to certain realty. The petition was attacked on numerous grounds by the demurrers, but in the view we take of the case the judgment sustaining all the demurrers and dismissing the action was correct and should be sustained, because the contract as alleged in the petition failed entirely to specify the terms of payment of the amounts due to Mrs. Hardin.

In *Saye* v. *Adams Loan & Investment Co.*, 173 *Ga.* 24 (159 S.

E. 575), the contract it was sought to enforce was as follows: "Petitioner to rent said property for a period of six months, and to pay defendant $50 per month rent for said property. At the end of six months or at any time prior thereto that petitioner saw fit, he retained the option of purchasing said property from defendant for the sum of $4750. Whatever amount had been paid by petitioner was to be applied on the purchase-price, and the balance of the purchase-price to be paid by petitioner assuming certain loans or mortgages against this property." The action was dismissed on general demurrer, and this court affirmed the judgment. In the opinion it was said: "We all agree to the correctness of the rule stated in 25 R. C. L. 219, § 18: 'The requirement of certainty as to contracts in order that they may be specifically enforced extends not only to the subject-matter and purpose of the contract, but to the parties, consideration, and even the time and place of performance, where these are essential.' Illustrations of different phases of this rule are found in the leading cases where adjudications of the courts of other jurisdictions have been unanimously agreed to. In Berry v. Wortham, 96 Va. 87 (30 S. E. 443), the court flatly decided the point as to specific statement as to the time and terms of deferred payment, thus: 'Equity will not enforce specific performance of a contract of sale not stating the time and terms of the deferred payments.' In Moore v. Galupo, 65 N. J. Eq. 194 (55 Atl. 628), the court said: 'An agreement in writing for the sale of lands for a total price of $54,000 provided that $250 should be paid on the date of the agreement, $250 on the 3d day of June, and $9500 on the delivery of the deed on or before the 1st day of next April; "the remaining sum of $44,000 to be secured by mortgage or mortgages on said premises, bearing six per cent. per annum interest." The proposed vendee paid the first two cash installments of the contract price, and refused to go further with the transaction. The proposed vendor filed a bill to compel the specific performance of the agreement. Held, the written contract shows that the parties intended $10,000 part of the consideration should be paid in cash on or before the delivery of the deed, and that the remaining $44,000 should be secured upon some unexpressed term of credit by mortgage or mortgages upon the premises bearing interest at 6 per cent. per annum. It does not show that the parties had come to any agreement as to how many

mortgages should be given, nor what should be the time or times of payment of the mortgage money, nor to whom the mortgage or mortgages should be made, nor (if more than one mortgage should be made) whether they should be concurrent or successive liens, or, if successive, in what order of precedence. *Held,* further, the written agreement is so uncertain and inconclusive as to essential incidents of the contract that no decree for specific performance can be made.' In Schmeling *v.* Kriesel, 45 Wis. 325, it was held: 'That the *term of credit* can not be supplied by legal presumption; nor can parol evidence be admitted to supply the defect, . . and, for the uncertainty of the contract in that particular, specific performance can not be enforced.' . . It was held, in Burnett *v.* Kullak, 76 Cal. 535 (18 Pac. 401): 'Defendant made a contract with plaintiff as follows: "Received of L. G. Burnett the sum of $100, being a deposit on the one-quarter interest of the Callis tract of forty-three and one half acres. . . The terms of this transaction are $4000 for said interest in said tract; $1500 cash within sixteen days from date, as soon as L. G. Burnett is satisfied as to the title of said tract, and $2500 on mortgage, as per deed and agreement from Callis (Tom) to Kullak & Winchester. It is hereby agreed that Burnett shall pay the interest on a certain promissory note for $1700 at 10 per cent. interest from April 5th." *Held,* that such a contract is too indefinite and uncertain to sustain an action of specific performance.' In Buck *v.* Pond, 126 Wis. 382 (105 N. W. 909), it was held: 'A memorandum of a contract for the sale of land which contemplates a partial cash payment on a certain day, and the giving of credit for the balance of the purchase-price, but fails to contain any stipulations as to the terms of the credit and the time of making deferred payments, is so indefinite and incomplete in a material part that specific performance thereof will not be decreed.' The contract in the case at bar is too indefinite and uncertain, and too greatly dependent upon subsequent negotiations between the parties, to be enforceable in equity under the doctrine of specific performance, and therefore the lower court did not err in sustaining the general demurrer." To the same effect are the rulings in *Crawford* v. *Williford,* 145 *Ga.* 550 (89 S. E. 488); *Trust Co. of Ga.* v. *Neal,* 161 *Ga.* 965 (132 S. E. 385); *Odum* v. *Downing Co.,* 177 *Ga.* 787 (171 S. E. 294).

Certainly it could not be contended that the contract in the case at bar, without the reference to the Federal Land Bank of Columbia, showed with any definiteness the terms of payment of the notes to be given to Mrs. Hardin. Does the reference to the Federal Land Bank furnish a key that would cure this uncertainty? Unless we can take judicial cognizance of the fact (if it is a fact) that the Federal Land Bank makes all loans for one certain, definite period, the reference to that bank does not furnish such a key as would cure the defect. The word "key" is usually referred to when a description of property, otherwise too indefinite, is made certain by reference to something more definite. In that case the reference to something that is certain is sometimes referred to as a key; but unless the key opens into something that is certain, it does not help. Suppose the plaintiffs in the instant suit prevailed. A decree would have to be entered compelling Mrs. Hardin to execute bonds for title to three named obligees, and to accept from them notes aggregating a stated sum. How many of such notes are there to be given? What amount each? When payable? If the plaintiffs should prove their case as laid, what would the court's decree contain as to the number, amounts, and maturity dates of the notes to be given? We know the interest rate, eight per cent., but that is all. In this view of the case it is unnecessary to adjudicate the question principally argued in the brief of counsel for the plaintiffs, that the relief prayed for against the defendants who were residents of the county in which the action was brought was such substantial relief as gave the superior court of that county jurisdiction of the non-resident defendants. All relief sought by the petitioners was based on their alleged right to have enforced the agreement set out in the petition, whereby Mrs. Hardin was to sell them the land involved. It having been held that this contract is unenforceable, and that for this reason the judge properly dismissed the action, no further rulings need be made. *Judgment affirmed. All the Justices concur.*