WHISNAND et al. v. WINGFIELD et al.

*96 P. 2d 318.*

No. 28169.   Oct. 31, 1939.

Rehearing Denied Dec. 5, 1939.

Thos. G. Andrews, Clyde L. Andrews, and James D. Fellers, all of Oklahoma City, for plaintiffs in error.

Dudley, Hyde, Duvall & Dudley, V. E. Stinchcomb, and Everest & Halley, all of Oklahoma City, for defendants in error.

OSBORN, J. This action was instituted in the district court of Oklahoma county on May 15, 1935, by E. G. Whisnand and W. R. Curry, hereinafter referred to as plaintiffs, against E. P. Wingfield and R. C. Jones, hereinafter referred to as defendants, wherein it was sought to compel defendants to deliver to plaintiffs a conveyance of 10 acres of mineral rights commonly referred to as royalty located in the south half of the northwest quarter of section 25, township 2 north, range 6 east, in Pontotoc county, or in the alternative for damages for failure to make such conveyance. Issues were joined between these parties and the cause proceeded to trial. During the course of the trial it appeared that the Panhandle Co-operative Royalty Company was the actual owner of the royalty involved herein and the plaintiffs procured permission to have that company made a party defendant. Thereupon plaintiffs filed an amendment and supplement to their petition seeking judgment against said company, which will be hereinafter referred to as defendant Panhandle Company.

Upon trial of the cause the court found:

"(a) The issues in favor of the plaintiffs and against the defendants E. P. Wingfield and R. C. Jones, except the question of bad faith upon their part, and that they and each of them acted in good faith, and that the plaintiffs are only entitled to recover the sum of $56.50, the amount of expenses properly incurred by them in examining abstract of title. To which findings, except as to their good faith, the defendants E. P. Wingfield and R. C. Jones jointly and separately except and exceptions are by the court allowed. To which findings as to the good faith of the defendants E. P. Wingfield and R. C. Jones and the amount of damages the plaintiffs except and exceptions are by the court allowed."

From the judgment entered upon said findings, the plaintiffs have appealed to this court. The contract for purchase of the royalty interest is evidenced by certain letters and telegrams between the parties. The facts relating to the title to the royalty herein involved are as follows:

On July 14, 1925, Marvine Brydia became the owner of the quarter section of land involved herein. Her grantors had previously conveyed to J. K. D. Shaffer

an undivided one-half of the minerals under said quarter section. On May 25, 1926, Marvine Brydia borrowed $6,000 from the Commissioners of the Land Office of the State of Oklahoma and executed to them a mortgage upon her interest in the quarter section of land. The note for which the mortgage was security was due on May 15, 1931. On May 7, 1929, Marvine Brydia conveyed to the Panhandle Company an undivided one-half of the minerals in and under the quarter section. This left her owning the surface of the quarter section; Shaffer owned an undivided 80 acres of the minerals, and the Panhandle Company owned the remaining undivided 80 acres in the minerals. On August 21, 1930, Marvine Brydia mortgaged her interest in said quarter section, and other lands, to G. W. Braley for $21,250. This mortgage was filed for record on October 23, 1934; a release of this mortgage dated February 8, 1935, was filed for record on June 21, 1935.

Some time prior to December 8, 1932, the Commissioners of the Land Office instituted a proceeding in the district court of Pontotoc county to foreclose their mortgage. On December 8, 1932, a foreclosure decree was entered showing an indebtedness then existing in a sum in excess of $9,000. On October 8, 1934, the commissioners transferred and assigned their note, mortgage, and judgment to Fred M. McMillan, Jr., and A. E. King, upon payment by these parties to said commissioners of the total amount due upon the mortgage indebtedness. On October 15, 1934, defendant Panhandle Company, in order to further secure McMillan and King, conveyed to them its mineral interest in the quarter section, whereupon McMillan and King became the joint record owners of the note, mortgage, judgment, and undivided 80 acres of the minerals in and under said quarter section.

On November 14, 1934, certain stockholders of the Panhandle Company commenced an action in the district court of Pontotoc county against the Panhandle Company, Flag Oil Company and A. E. King, Frank E. McMillan and the Security National Bank of Oklahoma City, in which they sought the appointment of a receiver of the property of the Panhandle Company and sought to cancel the royalty conveyance from the Panhandle Company to McMillan and King. The court rendered judgment in that action holding that McMillan and King owned the note, mortgage, and judgment, but that they held the mineral interest as security for the amount which they had paid to the Commissioners of the Land Office. It appears that no disposition was made of the application for appointment of a receiver.

It appears that McMillan was insisting that he be reimbursed for the amount he had paid out in the purchase of the note, mortgage, and judgment and was threatening to have an order of sale issued upon the judgment. The Panhandle Company was desirous of preventing the sale in order that its mineral interests might be preserved. It did not have sufficient funds to reimburse McMillan for the amount he had paid out and sought a loan from defendant R. C. Jones in the sum of $2,350, which, with funds the Panhandle had on hand, would be sufficient to reimburse McMillan. It appears that defendant Jones loaned said company said sum of $2,350 for the purpose hereinabove stated, and to secure him the directors of said company passed a resolution which, in part, provides:

"Further resolved that R. C. Jones of Cushing, Oklahoma, has agreed to advance certain sums for the purpose of repaying the said Frank E. McMillan, Jr., advanced for the purpose of saving said mortgaged premises from being sold at foreclosure sale, and the royalty interest of said company from being lost and that the officers of said company be and they hereby are authorized to enter into such agreement as may be necessary to secure the said R. C. Jones for said sums advanced, and if deemed advisable by said officers to transfer and convey to the said R. C. Jones such amount of royalty interest in said tract as may be agreed upon to compensate him therefor, the said officers having heretofore been authorized by referen-

dum vote of the stockholders of said company to sell, transfer or convey such amount of said royalty as may be found necessary for the purpose, of repaying the sums advanced by the said Frank E. McMillan, Jr., and A. E. King."

It appears that with funds advanced by Jones and other funds the Panhandle Company paid McMillan the amount he had previously advanced and that McMillan assigned all of his interest in the note and mortgage and judgment to A. E. King and reconveyed to the Panhandle Company all of his undivided mineral interest in and to the quarter section of land.

It appears that Jones, pursuant to an oral understanding with the officers of the Panhandle Company, thereafter undertook to sell a sufficient amount of the royalty owned by the Panhandle Company to reimburse him for the amount which he had loaned to it. He entered into certain negotiations with the defendant Wingfield in which he proposed to sell Wingfield 10 acres of royalty in said quarter section for $1,500. Wingfield was desirous of purchasing said 10 acres interest out of the south half of the quarter section. On January 11, 1935, defendant Wingfield wired defendant Jones confirming the purchase of 10 acres of royalty located in the south half of the quarter section for $1,500; defendant Jones answered by wire confirming the sale. On the same date defendant Wingfield wrote plaintiff Curry stating that he had purchased the 10 acres from Jones and had his confirmation of the same. Wingfield offered to deliver the royalty to Curry at a price of $175 per acre. On January 16, 1935, plaintiff Curry wrote defendant Jones a letter stating that defendant Wingfield had sold him the 10 acres of royalty and requested p r o p e r conveyance thereof to Wingfield. On January 25th Jones replied to the letter asking if the royalty would be accepted subject to a mortgage, and plaintiff Curry replied that it would not. Other correspondence passed between the parties. On April 5, 1935, Andrews & Andrews, attorneys for the plaintiffs, wrote defendant Jones re-

questing a delivery of the royalty involved herein. To that letter Jones replied that the sale was made to defendant subject to title being furnished by the Panhandle Company and it was found that due to lawsuits and receivership suits filed against the corporation they were unable to make satisfactory title to the royalty and that he had so advised Mr. Wingfield, who had released him from any obligation. Wingfield thereafter stated to plaintiffs that so far as he was concerned, "the deal was off."

A number of legal propositions are presented by the parties and argued in the briefs, but in view of the various concessions by plaintiffs it will be unnecessary to consider all of them. It is conceded that section 9969, O. S. 1931, 23 Okla. Stat. Ann. § 27, is the governing statute insofar as the liability of Jones and Wingfield is concerned. Said section is as follows:

"The detriment caused by the breach of an agreement to convey an estate in real property is deemed to be the price paid and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon; but adding thereto, in case of bad faith, the difference between the price agreed to be paid, and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land."

It is conceded that if Jones and Wingfield acted in good faith in failing to convey the property to plaintiffs, the judgment of the trial court is correct and should be affirmed.

It is pointed out that the trial court determined all of the issues in favor of plaintiffs as against Jones and Wingfield, except the amount of recovery. This includes a finding that there was a contract on their part and a breach thereof. The trial court further found "the issues in favor of defendant Panhandle Co-operative Royalty Company, a corporation, and against the plaintiffs" and "that the plaintiffs take nothing against the defendant Panhandle Co-operative

Royalty Company, a corporation, and that it have judgment against them for costs." This general finding includes such special findings as are necessary to sustain the judgment in favor of said defendants. We must proceed to determine whether or not such findings are contrary to the clear weight of the evidence.

Plaintiff's theory of recovery as against all of the defendants is stated in the brief as follows:

"King and McMillan had advanced the money with which to buy the judgment and mortgage, and held an assignment of it in their names. The Panhandle Co-operative Royalty Company had conveyed one-half of the minerals under the land (all it owned) to them as further security for their money. In the Wilson Case, the court had ascertained and decreed those facts, and had denied a receivership of the royalty, and had dismissed the action as to King and McMillan, and had authorized them to proceed to enforce the foreclosure decree if they were not paid within ten days the amount of money which they had advanced. King was willing to continue to carry his part of it, but McMillan wanted his money. The Panhandle Co-operative Royalty Company did not have enough to pay. Jones agreed to advance $2,350 for the purpose of paying McMillan, and did so. The Panhandle Co-operative Royalty Company paid $2,500. Those two sums were paid to McMillan in satisfaction of his claim on the property. He deeded his one-fourth interest in the royalty to the Panhandle Co-operative Royalty Company, and assigned his one-half interest in the mortgage to A. E. King. By that plan, the Panhandle Co-operative Royalty Company acquired the legal title to a one-half interest in the mineral rights in the land, and by that plan the Panhandle Co-operative Royalty Company paid one-half of the mortgage against the property. That contract was made expressly for the benefit of R. C. Jones and it was thereby provided that R. C. Jones should have the right to sell enough of this royalty to pay himself back his money. That was a valuable property right for which R. C. Jones paid a sum of money under a contract made expressly for his benefit, that equitable right which R. C. Jones thereby acquired he conveyed to the defendant E. P. Wingfield and the defendant E. P. Wingfield conveyed it to the plaintiffs."

The Panhandle Company did not use the funds obtained from defendant Jones for the purpose of acquiring property, but for the purpose of discharging an encumbrance against the property which it already owned.

It is the theory of plaintiffs that Jones was the beneficiary of a contract with the Panhandle Company, whereby Jones was authorized to sell sufficient royalty to obtain funds sufficient to reimburse himself for the funds advanced to pay off the encumbrance, and that plaintiffs are entitled to compel specific performance of that contract and the contract between Jones and Wingfield and themselves all in the same action, citing 58 C. J. 916, para. 75. It is a well-established rule that specific performance of a contract will not be granted unless the agreement sought to be enforced is definite and certain. Sticelber v. Iglehart, 169 Okla. 453, 37 P. 2d 638; Hill Oil & Gas Co. v. White, 53 Okla. 748, 157 P. 710; Superior Oil & Gas Co. v. Mehlin, 25 Okla. 809, 108 P. 545, 138 Am. St. Rep. 942. No contention is made that the contract with Jones to sell the mineral interests of the Panhandle Company specified the amount to be sold, the price per acre, or any other term or condition relating to said sale. It necessarily follows that the authority granted to Jones was nothing more than authority to find a purchaser and that the company reserved the right to fix the terms of the sale. Jones, as a mere agent of the company for the purpose of procuring a purchaser, was without authority to execute a contract of sale binding upon the owner. See Levy v. Yarbrough, 41 Okla. 16, 136 P. 1120; Annotation 48 A. L. R. 634. It therefore appears that plaintiffs are in no position to enforce the contract of sale evidenced by letters and telegrams between themselves and defendants Jones and Wingfield as against the Panhandle Company. The evidence also fails to disclose that there was a contract of sale between said company and the

defendant Jones which might be enforced either by Jones and Wingfield or by the plaintiffs. Jones, therefore, did not have a title which he could deliver. It necessarily follows that there could be no bad faith on the part of Jones and Wingfield in failing to make a conveyance to the plaintiffs.

The findings and judgment of the trial court are amply sustained by the evidence.

The judgment is affirmed.

WELCH, V. C. J., and RILEY, CORN, GIBSON, HURST, DAVISON, and DANNER, JJ., concur. BAYLESS, C. J., absent.