HOLLAND v. ROSS.

No. 30260.   Oct. 7, 1941.

*117 P. 2d 798.*

C. B. Holtzendorff and Louis C. Ross, both of Claremore, for plaintiff in error.

W. M. Hall and Frank Ertell, both of Claremore, for defendant in error.

DAVISON, J. For clarity and brevity the defendant in error and plaintiff in error will be referred to herein as "plaintiff" and "defendant," respectively. The undisputed facts out of which the controversy between the two parties arose are substantially as hereinafter related.

In September, 1935, plaintiff, who is in the business of drilling and producing oil and gas wells, drilled a producing gas well upon a lot belonging to one Walter Ross, in the town of Foyil, Okla. After plaintiff had equipped the well for production, and on or about October 9, 1935, it was connected with the gas distributing system of the Foyil Gas Company, and said company has purchased gas from said well since said date until the defendant "cut off" its supply from this source some time after he purchased the lot from Walter Ross in April, 1939, and before this action was instituted March 13, 1940. During the more than three years it purchased the gas, said company paid Walter Ross the royalty owner's share of one-eighth and plaintiff "the working interest" of seven-eighths of the proceeds of said gas sales, but after the defendant acquired the lot he refused to accept any of such proceeds, although he instructed the gas company to continue its payments to the plaintiff, and allowed a line to be installed from the well to the house on said lot into which he had moved, and thereby obtained gas for domestic purposes without payment therefor. In the meantime, Walter Ross, the former owner of the lot, died, and when the defendant thereafter disconnected the well from the gas company's distributing system, plaintiff commenced the present action.

In his petition plaintiff alleged, among other things, that before he drilled the

well upon the lot in question Walter Ross had orally agreed to execute and deliver to him a written oil and gas mining lease on said lot if he would drill a producing oil or gas well on said property. He further alleged that according to said agreement the lease was to be executed upon a "Producers 88" form; that he had drilled the well specified in said agreement, and in all respects had fulfilled his obligations thereunder, but because Walter Ross was his first cousin and friendly and confidential relations existed between the two, and because no written lease on the lot was necessary in order to sell the gas produced thereon, plaintiff had neglected to require said owner to execute the lease. Plaintiff further alleged that the defendant purchased the lot from Walter Ross with knowledge of plaintiff's rights therein and had agreed with his said grantor that plaintiff would not be disturbed in his ownership and operation of said well. It was further alleged that in the connection of his home with the well and his use of gas therefrom, as well as by authorizing or directing the gas distributing company to pay the proceeds from the seven-eighths working interest therein to plaintiff, the defendant had ratified the lease agreement between his grantor and plaintiff. In addition to other special and general relief unnecessary to detail, plaintiff asked that the court enter a decree declaring him to be entitled to an oil and gas mining lease upon the real estate involved, "according to the 'Producers 88 form'" and enjoining the defendant from molesting or interfering with the gas well or any of its fixtures and equipment, as well as from disconnecting said well from the gas distributing system in the town of Foyil.

In his answer to plaintiff's petition the defendant alleged, among other things, that the property in question was conveyed to him by warranty deed without the reservation of any oil or gas mining rights therein, and that the consideration he paid for same specifically included the well and the equipment appertaining thereto. He admitted that at the time of his said purchase he knew plaintiff had drilled the well, but denied all knowledge of the circumstances under which it was drilled. He also denied that plaintiff had any oral agreement with his grantor for the execution and delivery of an oil and gas mining lease on the premises, and also denied that he, himself, had ratified any such agreement. He further alleged that, if any such oral contract had been entered into, it was null and void.

Upon a joinder of the issues above described and other less important ones unnecessary to mention, the cause was tried to the court without a jury. There was very little conflict in the evidence introduced by the two parties upon the decisive issues of the controversy. In addition to the undisputed facts hereinbefore related, it was established by positive testimony on behalf of the plaintiff that before the gas well was drilled on his lot, Walter Ross had agreed to give plaintiff a lease on same if he would drill such a well, and the defendant's testimony did not directly dispute this. At the conclusion of the trial the court entered its judgment for the plaintiff, making various specific findings in his favor and granting him the principal relief prayed for in his petition. After the defendant's motion for a new trial was overruled, he perfected this appeal.

Under the first proposition urged by the defendant for reversal of the judgment, it is contended that the court erred in giving effect to any oral contract such as plaintiff claimed to have had with Walter Ross for the execution and delivery of an oil and gas lease on the lot in question for the reason that such contracts are void and unenforceable under subdivision 5 of our statute of frauds (sec. 9455, O. S. 1931, 15 Okla. St. Ann. § 136). The statute does not apply to executed, as distinguished from executory, contracts for the sale of real estate or an interest therein, and ordinarily where one, who has agreed with the owner of land to lease the same for oil and gas purposes, pays the consideration provided in said agreement, goes into possession of said

land and develops same as contemplated in the agreement with the knowledge and consent of the owner, this is sufficient to remove the contract from the operation of the statute. See Lacy v. Wozencraft, 188 Okla. 19, 105 P. 2d 781; Pepis v. Red Bank Oil Co., 170 Okla. 189, 44 P. 2d 846; Woodworth v. Franklin, 85 Okla. 27, 204 P. 452. There is no question but that the plaintiff in the present case went into possession of the lot in controversy for the purpose of fulfilling his oral agreement with Ross, the owner thereof, and did fulfill same to the extent of drilling the producing gas well thereon with the knowledge and consent of said owner. It would thus appear that under the rules above stated the case at bar does not come within the operation of the statute of frauds. In the argument advanced under the defendant's third proposition, however, our attention is called to the fact that in its judgment the trial court has, in effect, granted plaintiff specific performance of an oral contract for the execution and delivery of an oil and gas mining lease, and he cites the rule that the right to such relief cannot be based upon the performance of personal services unless they are of such an exceptional character that their value cannot be correctly estimated by any pecuniary standard and no adequate remedy could therefore be obtained in an action for damages. The defendant contends that the plaintiff's services in drilling and equipping the well in question were of such an ordinary character that they could not constitute "part performance" as a ground for equitable relief under the above rule as quoted in Hall v. Haer, 160 Okla. 118, 120, 16 P. 2d 83, 84, and in support of his argument points to his own testimony that the cost of drilling and equipping such a well is $300. While the rule that specific performance will not be granted where there is an adequate legal remedy applies to cases involving written contracts, where the operation of the statute of frauds is not in question, as well as in cases involving oral contracts, yet the courts have apparently not allowed it to stand in

the way of granting such relief in the latter class of cases where payment of the consideration is not the only act of performance, and in addition thereto the plaintiff has gone into possession of the premises and improved the same. This seems to result from the desire to do justice in spite of a rule that would otherwise prevent it. Thus, if the contract has been performed to that extent, the fact that the plaintiff might be fully reimbursed for the consideration he has given in money or services and the labor or money he has expended upon improvements, does not preclude specific performance of his contract. See excerpt from Burden v. Sheridan, 36 Iowa, 125, 14 Am. Rep. 505, quoted in Bahnsen v. Walker, 89 Okla. 143, 214 P. 732, and annotations at 101 A. L. R. 927 (particularly pages 940, 948, 1091) and 49 L. R. A. (N. S.) 113; Danciger Oil & Refining Co. v. Burroughs (C. C. A.) 75 F. 2d 855, 857; Summers, Oil & Gas, vol. 1, p. 518, § 192; Restatement of the Law, Contracts, §§ 358 (2), 360; 361, 370, 372 (1); Pomeroy's Equity Jurisprudence (4th Ed.) vol. 1, § 221, pp. 336, 337; vol. 4, §§ 1401-1403, 1409; vol. 5, §§ 2167, 2248, 2249 (p. 5027), 2250 (p. 5031).

Under his third proposition the defendant also argues that the drilling of the gas well was not part performance of any lease, but under the oral contract herein sought to be enforced, it was merely a condition precedent to the execution and delivery of such a lease. By means of such reasoning, counsel arrives at the conclusion that plaintiff's entering upon the lot and drilling the well cannot be relied upon as part performance, and the only act then left for him to rely on to constitute this necessary element of proof is his receipt of gas run payments, which they say is not necessarily or exclusively referable to a contract by the owner of a lot to execute and deliver a lease thereon, but that such payments could just as reasonably have been made in payment upon a bare drilling contract. This argument is utterly specious and merely clouds the issues. The contract in ques-

tion and the one sought to be established is not the lease contract itself but an oral contract to execute and deliver a lease. In apparent realization of this, counsel also argue that plaintiff's possession for the purpose of drilling the well was insufficient as an act of part performance of such a contract, because it too was not exclusively referable to a contract of that nature. They cite the rule enunciated by this court in Boese v. Childress, 83 Okla. 60, 63, 200 P. 997, 1001, to the effect that where the vendee under an alleged oral contract for the purchase of land has shared the occupancy thereof with the vendor, such mixed possession is insufficient to satisfy the requirements of the doctrine of part performance. The decision cited is not applicable to a case like the present one. In such a case the possession is necessarily "mixed." The party obliged to go upon the premises and drill is not entitled to the exclusive possession thereof. The right of ingress and egress together with the use and occupancy of that portion of the surface necessary to the performance of the operations he has agreed to accomplish is usually all of the "possession" he assumes. The test announced by this court in Boese v. Childress, supra, which follows the general rule (annotation 101 A. L. R. 923, 955-965, 1011, 1013) for determining whether the possession relied upon as part performance of a contract, is exclusively referable to such a contract, is as follows:

". . . It must be such a possession that an outsider, knowing all the circumstances attending it save only the one fact, the alleged oral contract, would naturally and reasonably infer that some contract existed relating to the land, of the same general nature as the contract alleged.

"If the possession, therefore, could be accounted for just as well by some other right or title actually existing in the vendee's favor, or by some relation between him and the vendor other than the alleged oral contract, it is not such a possession as the doctrine requires."

When measured by the standard set forth in the above quotation, we think it is clear that the plaintiff's possession of the lot in question was sufficient as an act of part performance of his agreement with Walter Ross. While there is logic in the defendant's argument that some of the rights plaintiff enjoyed in connection therewith, such as that of ingress and egress during the drilling of the well and receiving payments out of the proceeds of the sale of its product, might as reasonably be said to indicate a drilling contract, as a contract for a lease between Walter Ross and the plaintiff, if only one of such circumstances were considered alone, this is not true when all of the circumstances attending plaintiff's possession are considered together. The evidence shows that the plaintiff not only went upon the lot during the drilling of the well, but also exercised that privilege after the well was completed, attending to its operation and the marketing of its product. He would have no such right under the ordinary drilling contract nor would he have received a lessee's share of the proceeds from the sale of said product long after he had received more than a sufficient amount from this source to pay for the drilling and equipment of the well, as the evidence shows he did in this case. We think that "an outsider" knowing these circumstances must naturally and reasonably have inferred that plaintiff had something in the nature of an oil and gas lessee's interest in the premises. The foregoing also presages the answer to defendant's contention that plaintiff's possession was not sufficient to put him on inquiry as to plaintiff's interest in the lot. With regard to this argument it may be significant, in addition to the fact that plaintiff openly exercised the rights of an oil and gas lessee, to note that, according to the evidence, the defendant had actual knowledge of plaintiff's claim before he purchased the lot from Walter Ross. According to the undisputed testimony, soon after the defendant had begun to consider purchasing the lot and before the sale was consummated, plaintiff and defendant had a conversation in which, according to the plaintiff, the defendant admitted he

knew plaintiff "owned" the well, and that he could not take it away from him. The defendant, himself, admitted on the witness stand that he knew the nature of plaintiff's claims, but indicated he had consulted at least one lawyer with reference thereto, and upon the basis of legal advice concluded that since there was no record of a lease on the premises, plaintiff had none. In view of such evidence the defendant's claim that he was an innocent purchaser for value without notice does not warrant serious consideration even though he testified that Walter Ross had told him plaintiff had no lease on the lot and never would have.

Under his fifth proposition, defendant argues that plaintiff is guilty of laches in his present attempt to enforce his rights under his oral contract with Walter Ross, and his counsel point out that there is no proof in the record that he ever demanded that the said Ross execute and deliver to him any such lease as he claims said owner agreed to do. Our attention is also directed to the fact that this action was not instituted until approximately six months after Ross's death and twelve months after the defendant had purchased the property and commenced his occupancy of same. This is another defense upon which the defendant in this case cannot rely, for the evidence fails to disclose that he was in any manner misled to his injury by such delay. See Harjo v. Johnston, 187 Okla. 561, 104 P. 2d 985; Home-Stake Royalty Corp. v. McClish, 187 Okla. 352, 103 P. 2d 72; Blackstock Oil Co. v. Caston, 184 Okla. 489, 87 P. 2d 1087; Ware v. Hall, 116 Okla. 70, 243 P. 740. On the contrary, the record does reveal that, knowing of plaintiff's claimed rights and interest in the premises, he, himself, acted in such a manner as to bring about such a delay by lulling plaintiff into a feeling of false security concerning his rights. In this connection we refer to the defendant's acquiescence in the operation of the well in the same manner after his purchase of the lot as before said purchase. Not only does the evidence show, as hereinbefore noted, that after he acquired the lot he directed the Foyil Gas Company to continue its payments to plaintiff of a lessee's portion of the gas sales proceeds, but, according to plaintiff's testimony, he promised the latter personally that he would in no way interfere with the operation of the well and apparently kept this promise until just before this action was instituted.

The solution of the question which is submitted under the defendant's second and remaining proposition comprises perhaps the most difficult problem of the entire case. There he invokes the rule that specific performance of an oral contract cannot be decreed unless the contract is complete within itself and its terms are definite and certain. The record is silent with reference to the provisions that were to be contained in the lease that Walter Ross agreed to execute and deliver to the plaintiff. All that the evidence tends to establish directly is the fact of agreement. There is no evidence to show that said parties ever considered or agreed upon the form of lease to be executed. Of course, it can readily be inferred from the circumstances that the lease was to be an oil and gas mining lease and that the lessor was to receive a one-eighth part of all of the gas produced from the well upon the leased premises, but there is no proof that the lease was to be executed upon a "Producers 88" form, as alleged in plaintiff's petition and affirmed in the trial court's judgment. Consequently, under the general rule followed by this court, plaintiff was not entitled to specific performance of an oral contract to execute and deliver to him such a lease. See Whisnand v. Wingfield, 186 Okla. 148, 96 P. 2d 318; Owens v. Wilson, 135 Okla. 38, 273 P. 895; Erwin v. Hardin, 187 Ga. 275, 200 S. E. 159; annotation, 101 A. L. R. 923, 996 ff; 12 Am. Jur. 521; 58 C. J. 930-947. This, however, presents no insurmountable obstacle to the protection of those rights in the premises to which the plaintiff has been clearly proven to be entitled under his oral contract with Walter Ross. Here the only claimed right of the plaintiff under said contract, with which the defendant is shown to

have interfered, is the former's right to have the connection between the well and the Foyil Gas Company's line maintained so that gas from the well might be marketed and plaintiff can receive his seven-eighths share of the proceeds from such marketing. Under the evidence showing that this right was exercised for more than three years after the oral contract was entered into, there can be no question but that said agreement contemplated operation of the well in such a manner as to give effect to this right. The trial court, therefore, committed no error in enjoining the defendant's interference with plaintiff's enjoyment or exercise of said right. Said court did err, however, in decreeing that plaintiff should be allowed to operate upon the lot in all respects as the owner of a Producers 88 lease thereon would be entitled to do, since it was not proved that by his oral contract with Walter Ross he was to have that form of lease. The trial court's judgment is therefore modified to conform with the views herein expressed, and, as thus modified, is hereby affirmed.

CORN, V. C. J., and RILEY, OSBORN, BAYLESS, GIBSON, HURST, and ARNOLD, JJ., concur. WELCH, C. J., absent.